M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
aberry@justice4you.com
gharoutunian@justice4you.com

Jerrod C. Patterson (*pro hac vice*)
Joseph M. Kingerski (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
jerrodp@hbsslaw.com
joeyk@hbsslaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE FUTURE MOTION, INC. PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br>THE PUTATIVE CLASS ACTION,<br>*Loh, et al. v. Future Motion, Inc., et al.* | Case No. 5:21-cv-06088-EJD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Assigned to: Beth Labson Freeman<br>Hearing Date: May 23, 2024<br>Hearing Time: 9:00 a.m.<br>Location: Courtroom 3, 5th Floor |

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED…………………………………………     1

I.      INTRODUCTION…………………………………………………………….     1

II.     DEFENDANT'S MOTION TO STRIKE SHOULD BE DENIED………………………..     3

        A.      PERTINENT FACTUAL AND PROCEDURAL BACKGROUND……………..     3

        B.      LEGAL STANDARDS GOVERNING MOTIONS TO STRIKE…………………     8

        C.      DEFENDANT'S CITATIONS TO CASES GRANTING MOTIONS TO
                STRIKE ARE THE EXCEPTION – NOT THE NORM – AND NONE OF
                THOSE CASES APPLY HERE……………………………………………..     11

                1.   *DeCoteau v. FCA US LLC,* No. 2:15-cv-00020, 2015 WL 6951296
                     (E.D. Cal. Nov. 10, 2015)…………………………………………..     11

                2.   *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 160 (1982)……..     11

                3.   *Moon v. County of Orange*, No. 19-cv-258, 2019 WL 8108730
                     (C.D. Cal. Nov. 4, 2019)…………………………………………     12

                4.   *Enoh v. Hewlett Packard Enter. Co.*, Case No. 17-CV-04212-BLF,
                     2018 WL 3377547 (N.D. Cal. July 11, 2018)…………………………     12

                5.   *Stokes v. CitiMortgage, Inc.*, No. CV 14-00278 BRO SHX, 2015 WL 709201
                     (C.D. Cal. Jan. 16, 2015…………………………………………     13

                6.   *Sandoval v. Ali*, 34 F. Supp. 3d 1031 (N.D. Cal. 2014)………………………     13

                7.   *Langan v. United Services Auto. Ass'n*, 69 F. Supp. 3d 965 (N.D. Cal. 2014)…..     14

                8.   *Lyons v. Bank of America*, NA 11-cv-1232-CW, 2011 WL 6303390
                     (N.D. Cal. 2011)…………………………………………………     14

        D.      PLAINTIFFS SPECIFICALLY ARTICULATE A UNIFORM DEFECT THAT IS
                PRESENT IN EVERY ONEWHEEL……………………………………………..     15

        E.      THE ISSUES RAISED BY PLAINTIFFS ARE NOT INDIVIDUALIZED…………     16

        F.      DEFENDANT'S MISREPRESENTATIONS……………………………………..     18

        G.      A CHOICE-OF-LAW ANALYSIS IS PREMATURE AT THIS JUNCTURE AND

-i-

SHOULD NOT BE CONSIDERED………………………………………………  21

## **TABLE OF CONTENTS**

**Page**

III.    IF THE MOTION IS GRANTED, PLAINTIFFS REQUEST LEAVE TO AMEND……  23

IV.    CONCLUSION……………………………………………………………………  24

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE
PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:21-cv-06088-EJD

**TABLE OF AUTHORITIES**

**Cases**                                                                               **Page**

*Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972)…………………………… 21

*Allen v. City of Santa Monica*, 2013 WL 6731789 (C.D. Cal. Dec. 18, 2013)…………………… 8

*Baas v. Dollar Tree Stores, Inc.,* No. C 07-03108 JSW, 2007 WL 2462150
   (N.D. Cal. Aug. 29, 2007)………………………………………………………… 10

*Bal v. New Penn Fin., LLC*, No. SACV 14-1558 AG JCGX, 2015 WL 3867984
   (C.D. Cal. June 22, 2015)………………………………………………………… 10

*Balser v. Hain Celestial Grp.*, Inc., 640 F.App'x 694, 696-97 (9th Cir. 2016)…………………… 10

*Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2006 WL 3422198 (N.D. Cal. Nov. 28, 2006)……… 9

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013)………………………………… 20

*Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D. Cal. 2004)…………………………... 20

*Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010)……………………... 20

*Cholakyan v. Mercedes Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011)…………8, 10, 14

*Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013)…………………………... 22

*Collins v. Gamestop Corp.*, C10-1210-TEH, 2010 WL 3077671 (N.D. Cal., Aug. 6, 2010)…..19, 20, 23

*Comcast v. Behrend*, 569 U.S. 27, 34 (2013)…………………………………………………………. 3

*Cruz v. Sky Chefs, Inc.*, C-12-02705 DMR, 2013 WL 1892337 (N.D.Cal. May 6, 2013)………….. 10

*Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)…………………………………… 20

*DeCoteau v. FCA US LLC,* No. 2:15-cv-00020, 2015 WL 6951296 (E.D. Cal. Nov. 10, 2015)…... 11

*Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)…………………………………………….. 24

*Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987)…………………………………………… 24

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011)………………………… 17

*Enoh v. Hewlett Packard Enter. Co.*, Case No. 17-CV-04212-BLF, 2018 WL 3377547
   (N.D. Cal. July 11, 2018)………………………………………………………… 12

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE
PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:21-cv-06088-EJD

*Estrella v. Freedom Financial Network, LLC*, 2010 WL 2231790 (N.D. Cal. 2010)……………    19

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page**

*General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 160 (1982)……………………    11,12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 at 1022 (9th Cir. 1998)…………………………………    20

*Hunter v. Nature's Way Prod., LLC*, No. 16CV532-WQH-BLM, 2016 WL 42621885
    (S.D. Cal. Aug. 12, 2016)……………………………………………………………………………    10

*Hynix Semiconductor, Inc. v. Rambus, Inc.*, 2007 WL 4062845 (N.D. Cal. Nov. 15, 2007)……..     9

*In re Clorox Consumer Litigation,* 894 F.Supp.2d 1224, 1237 (N.D. Cal. 2012)…………………    23

*In re Jamster Mktg. Litig.*, 2009 WL 1456632 (S.D. Cal. May 22, 2009)………………………...     9

*In re New Century*, 588 F.Supp.2d 1206, 1220 (C.D. Cal. 2008)…………………………………    10

*In re NVIDIA GPU Litig.*, 2009 WL 4020104 (N.D. Cal. Nov. 19, 2009)………………………..     9

*In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.*,
    758 F.Supp.2d 1077, 1096 (S.D.Cal. 2010)……………………………………………………..    23

*In re Wal–Mart Stores, Inc. Wage & Hour Litig.*, 505 F.Supp.2d 609, 614-16 (N.D. Cal. 2007)...     9

*Kazemi v. Payless Shoesource Inc.*, No. C 09-5142 MHP, 2010 WL 963225 (N.D. Cal. 2010)….    24

*Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 526 (C.D. Cal. 2012)………………………...    20

*Langan v. United Services Auto. Ass'n*, 69 F. Supp.3d 965 (N.D. Cal. 2014)………………………    14

*Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)………………………    24

*LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D. Cal. 1992)………………….    10

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)………………………………………………    24

*Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1122 (N.D. Cal. 2013)………………     8

*Lengen v. Gen. Mills, Inc.*, 185 F.Supp.3d 1213, 1223  (E.D. Cal. 2016)………………………….    10

*Long v. Graco Children's Products Inc.*, No. 13-CV-01257-JD, 2014 WL 7204652
    (N.D.Cal. Dec. 17, 2014)……………………………………………………………………………    10

*Lyons v. Bank of America*, NA 11-cv-1232-CW, 2011 WL 6303390 (N.D. Cal. 2011)………..14, 15, 18

-iv-

*Mag Instrument, Inc. v. JS Prods., Inc.*, 595 F.Supp.2d 1102, 1106 (C.D. Cal. 2008)................  10

**TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page**

*Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012).............................21, 22

*Moon v. County of Orange*, No. 19-cv-258, 2019 WL 8108730 (C.D. Cal. Nov. 4, 2019)...........  12

*Moreno v. Baca*, 2000 WL 33356835 (C.D. Cal. Oct. 13, 2000).........................................  9

*Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 595-97 (C.D. Cal. 2008)....................  20

*Plascencia v. Lending 1st Mortg.* 259 F.R.D. 437, 448 (N.D. Cal 2009)...............................19,21

*Podobedov v. Living Essentials, LLC*, 2012 WL 2513489 (C.D. Cal. Mar. 21, 2012).................  8

*RDF Media Ltd. v. Fox Broad. Co.*, 372 F.Supp.2d 556, 561 (C.D. Cal. 2005).........................  10

*Rosales v. Citibank*, 133 F.Supp.2d 1177, 1180 (N.D. Cal. 2001).......................................  10

*Rosenberg v. Avis Rent A Car Sys.*, 2007 WL 2213642 (E.D. Pa. July 31, 2007).....................  9

*Sanders v. Apple, Inc.*, 672 F.Supp.2d 978 (N.D. Cal. 2009)..........................................  18

*Sandoval v. Ali*, 34 F. Supp. 3d 1031 (N.D. Cal. 2014).................................................13,14

*Sapiro v. Encompass Ins.*, 221 F.R.D. 513, 518 (N.D. Cal. 2004).....................................  8

*Shein v. Canon U.S.A., Inc.*, No. CV 08-07323CASEX, 2009 WL 3109721.............................. 9,10
   (C.D. Cal. Sept. 22, 2009)

*Silverman v. Smithkline Beecham Corp.*, No. CV 06-7272DSFCTX, 2007 WL 3072274
   (C.D. Cal. Oct. 16, 2007)..........................................................................  10

*Stokes v. CitiMortgage, Inc.*, No. CV 14-00278 BRO SHX, 2015 WL 709201
   (C.D. Cal. Jan. 16, 2015)..........................................................................  13

*Tietsworth v. Sears, Roebuck & Co.*, 720 F.Supp.2d 1123 (N.D. Cal. 2010)..........................  20

*Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-CV-04984-JST, 2016 WL 344479
   (N.D. Cal. Jan. 28, 2016)..........................................................................22, 23

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 n.6 (2011).....................................  17

*Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).............17, 20

# TABLE OF AUTHORITIES

**<u>Other</u>**                                                                 **<u>Page</u>**

Fed. R. Civ. P. 12(f)……………………………………………………………...8, 9, 11

Fed. R. Civ. P. 23……………………………………………………………….2, 10, 14, 24

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Defendant has carried its burden to prove that the Court should strike Plaintiffs' class allegations at the pleading stage.

2. Whether a choice-of-law analysis is appropriate at this stage of litigation.

3. Whether Plaintiffs should be granted leave to amend if the Court grants Defendant's Motion to Strike.

## I.      INTRODUCTION

Plaintiffs have filed a Consolidated Class Action Complaint ("Complaint") in which they allege that Defendant Future Motion, Inc. ("Defendant") sold products containing a dangerous defect. Those products, Onewheel (original model), Onewheel+, Onewheel+XR, Pint, Pint X, and GT (collectively "Onewheels"), are one-wheeled, self-balancing, personal transportation devices. The defect set forth in detail in Plaintiffs' Complaint is specifically identified and universal to every Onewheel of every model and type. It is also a significant safety hazard. As a result of this defect, many people have suffered catastrophic injuries, and several have died.

To be operated safely, self-balancing vehicles must perfectly maintain their self-balancing state the entire time the vehicle is in use. However, each Onewheel has an insufficient power system that is unable to self-balance the board at all times while it is in use. This problem is further exacerbated by the fact that Defendant designed Onewheels to operate at the edge of their functional limits. To make matters worse, the boards' underpowered components are also unable to provide sufficient energy to the boards' sole safety feature—"Pushback." In combination, this renders the boards defective and unsafe because they are dangerously prone to shutting down suddenly, nosediving into the ground without warning, and ejecting the rider from the board ("Unwarned Nosedive"). At any time the Onewheel's power system is taxed at or beyond its limits, the Onewheel suddenly and spontaneously shuts down without warning of that impending shutdown, which results in an Unwarned Nosedive and the rider being ejected from the

-1-

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE
PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:21-cv-06088-EJD

board. As a result of this defect, and the resulting Unwarned Nosedives, every Onewheel owner is at risk of serious physical injury or death every time they operate their device.

Defendant's Motion to Strike is simply a Motion in Opposition to Class Certification in different packaging. Tellingly, Defendant fails to include in its motion the legal standard it must overcome to strike Plaintiffs' class allegations. As discussed below, well-settled case law disfavors motions to strike class allegations at the pleading stage because such motions are premature when no discovery has taken place. Defendant nevertheless requested the Court to engage in an examination of class certification issues, without evidence to support its claims.

In arguing that the class allegations should be stricken, Defendant ignores and contorts the central issues that make this case well-positioned for class treatment. While it is inappropriate to consider Defendant's premature challenge to a class certification motion that Plaintiffs have yet to bring, Plaintiffs' Complaint readily demonstrates the viability of class certification based on common claims and core issues of fact, including: a uniform design defect (an insufficient power system that results in Unwarned Nosedives) across all Onewheels at the time of purchase; the sufficiency of Defendant's written materials that accompany all Onewheels; the accuracy of claims made in conjunction with Defendant's advertising and marketing of its Onewheels; and Defendant's failure to disclose, and active concealment of, the uniform defect. Nothing in Defendant's Motion to Strike warrants preempting discovery and a full class certification analysis by the Court under Rule 23.

Defendant mistakenly argues that some Class Members have never experienced the Nosedive Defect. *See* Def. Future Motion, Inc's Mem. Supp. Mot. Strike Pls.' Consol. Class Action Compl., ECF No. 78 (hereinafter, "Mot.") at 20-21. However, Plaintiffs allege that all Class Members were injured when they purchased a Onewheel with a uniform safety defect that results in damages in the form of overpayment for and diminution in value of their devices. Such damages are amenable to class treatment

and, unlike plaintiffs in *Comcast v. Behrend*, 569 U.S. 27, 34 (2013), Plaintiffs in this case are only seeking diminution in value damages that are related to the alleged defect.

Defendant further mischaracterizes Plaintiffs' claims when it suggests that they implicate a multitude of individualized issues and depend on each rider's unique experience with their board. Defendant then asks this Court to rule on typicality and adequacy at the pleading stage. While such an analysis is premature, Plaintiffs readily satisfy both requirements. Plaintiffs allege that all Onewheels contain an identical safety defect—they are designed with an insufficient power system that shuts off without warning or regard for rider safety. Combined with the devices' inadequate warning system, all riders are subjected to extremely dangerous Unwarned Nosedives. Moreover, Plaintiffs also allege that Defendant failed to adequately warn riders and neglected to disclose the existence of this deadly safety defect. Indeed, Defendant still denies its existence and continues to blame catastrophic injures on "user error," even as it continues to market Onewheels as safe, fun, reliable transportation for all skill levels and almost any age. Whether these claims are true or false will be proven by class wide evidence. For these reasons and others detailed below, Defendant's Motion to Strike should be denied in full.

## II.    **DEFENDANT'S MOTION TO STRIKE SHOULD BE DENIED**

### A.    PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

Defendant sells Onewheels, self-balancing, battery-powered, one-wheeled transportation devices that are often referred to as electric skateboards. ¶ 30.[1] Defendant is responsible for the overall design, development, and manufacturing of Onewheels and all of the subsystems that accompany them, including motors, power electronics, battery modules, firmware, and smartphone applications ("apps"). ¶ 31. Defendant also publishes the safety information and Owner's Manuals that consumers rely on before and

---

[1] All "¶" references are to the Consolidated Class Action Complaint, ECF No. 76 ("Complaint"), unless otherwise indicated.

-3-

after their Onewheel purchases. ¶ 32. Defendant promotes the Onewheel as a harmless "toy" that "riders of all ages" can use "with a little instruction and practice." ¶¶ 126–128.

This advertising campaign belies the boards' safety because Onewheel riders are all at risk due to the Nosedive Defect. ¶ 54. The Nosedive Defect has seriously injured numerous riders across the country, including Plaintiffs here. *See generally* ¶¶ 166–420. At least four people have died from Nosedive incidents. ¶ 36. In one of these accidents, a father had a fatal crash in front of his minor son. ¶ 41. Recognizing this danger, the U.S. Consumer Product Safety Commission ("CPSC") evaluated the Onewheels and confirmed that they pose a significant danger because the Nosedive Defect can cause riders to be ejected, which frequently results in serious injury. ¶ 36. The CPSC also took the extraordinary step of warning consumers about the risk of riding a Onewheel and concluded that purchasers should "immediately stop using all Onewheel models." ¶ 36.

The Nosedive Defect occurs due to Defendant's design choices. ¶ 54. Defendant designed Onewheels so that the motor preemptively shuts down when the board's components are operating too close to their functional limits. *Id.* The sole purpose of this design is to prevent damage to the board. *Id.* This preemptive shutdown design causes a Onewheel to immediately lose its ability to self-balance, and the rider's forward momentum slams the front of the board—its "nose"—into the ground. *Id.* Hence, a "Nosedive" frequently ejects the rider from the board without warning. *Id.* This issue is aggravated because, unlike competitors, the hands-free platform of the Onewheel is essentially a two-foot-long skateboard with a wheel at the center. ¶ 53. When riders put their body weight on their front foot to move the board forward, riders can place their weight (and corresponding momentum) more than twelve inches in front of the wheel axel. *Id.* In turn, Onewheels must generate significant mechanical force to counteract this leverage and balance the rider's weight over the wheel. *Id.* This places the board's components under greater stress and causes them to operate closer to their functional limits in order to keep the rider balanced. *Id.* Thus, on one hand, Defendant designed Onewheels so that the motor shuts down when the

-4-

board's components are operating too close to their functional limits, but, on the other hand, Defendant encouraged consumers to ride Onewheels in a manner that causes the board's components to operate close to the edge of their functional limits. ¶¶ 53–55. This explains why Nosedives occur frequently and unexpectedly. *Id.*

Moreover, physical "Pushback" from the board—Onewheels' sole safety feature—does not adequately protect riders from the Nosedive Defect. ¶ 64. Defendant claims that a Pushback "warning" is intended to alert riders that they are reaching the board's functional limits and that a motor shutdown is imminent. ¶ 64. This "safety feature" is inadequate for two primary reasons. *See* ¶¶ 63–82. First, Defendant's reliance on a single warning feature places riders at risk. ¶ 63. Unlike other self-balancing devices, a Onewheel's Pushback is not strong enough to physically push the rider back to a stable position over the wheel by itself, and the rider has to discern the cause of the warning (with no information other than Pushback). ¶ 64. Pushback is triggered for a wide variety of reasons. ¶ 63. This "one warning for all dangers" approach means that riders have no certain way of knowing what caused the Pushback, the appropriate corrective action to take, and if their corrective action is resolving the issue. ¶ 66. If a rider does not rectify the issue quickly, they risk spontaneous ejection from the board and serious injury. *Id.* Second, a Pushback warning is delivered to the rider by operation of the Onewheel's motor and battery. ¶ 63. However, a Onewheel's motor and battery often operate at the edge of their functional limits, and if the board needs additional power to issue a Pushback warning, the motor and battery are simply not capable of lifting the rider. ¶ 72. The power available for Pushback is inversely related to the strain on the motor and battery; thus, Pushback is at its weakest and least detectable when the rider needs it most to avoid a Nosedive. ¶ 75. Consequently, Pushback is often unhelpful or difficult to detect, and in situations where it goes unnoticed or fails to engage entirely, a rider will continue to push the front deck of the board downward until the Onewheel suddenly stops. ¶ 82. Riders are helpless to prevent their forward momentum from throwing them headfirst off the front of the Onewheel. *Id.*

-5-

Defendant is aware of the Nosedive Defect and the danger it poses to riders. ¶ 88. Defendant designed complicated firmware that enables Onewheels to self-balance and instructs the motor to shut down when the board's components approach their functional limits. ¶¶ 88–89. In the course of developing and testing the firmware, Defendant must have learned Pushback is unreliable and does not work as an adequate safety warning because riders routinely experience Nosedives during normal, anticipated riding conditions. ¶ 89. Each Onewheel Owner's Manual also includes a "Declaration of Conformity" that certifies the product was adequately tested to ensure the product was fully operational and safe. ¶ 91. The Nosedive Defect is so pronounced that it should have been detected during this safety testing. ¶ 92. If this testing was performed properly, Defendant would have known about this defect before it sold Plaintiffs their Onewheels. ¶ 92.

Defendant also introduced a Onewheel app in 2017 that collects data on each board's battery, shutdowns, and component performance, and it allows users to share their board's diagnostics with Defendant at any time. ¶¶ 94–95. Diagnostic reports concerning the failure of the Pushback warning system and Nosedives would have likewise alerted Defendant to the existence of the Nosedive Defect. ¶ 97. Defendant is currently litigating a "significant group" of personal injury cases—including 19 matters pending in 10 California counties—related to Onewheels' design and the Nosedive Defect, ¶ 105; reports of injuries caused by these issues have been publicly posted on the internet for years—including on Defendant's own website, ¶¶ 98–104; and a market has developed for third-party products that are specifically designed to counteract the dangerous effect of Nosedives. ¶¶ 119–122.

The risk associated with the boards has also been exacerbated by Defendant's inadequate safety information. ¶ 123. Onewheels' Owner's Manuals deemphasize the legitimate safety risks associated with riding in favor of emphasizing the boards' ease of use; in fact, the Owner's Manual never identifies Pushback as a warning signal. ¶¶ 131–132. Likewise, Defendant never notified consumers that Pushback will only engage if there is enough power in the motor and battery to generate a warning and did not

-6-

mention that if there is not enough power, there is a substantial chance that a rider will experience a Nosedive. ¶ 144. Despite its knowledge of the Nosedive Defect, Defendant continues to misrepresent that Onewheels are "safe" as long as riders "respect the board's limits and Pushback safety feature." ¶ 151.

Defendant's advertising similarly endangered consumers by obscuring the risk associated with riding a Onewheel. Defendant claims that anyone can ride a Onewheel, and it has promoted them as a tool to "Destroy Boredom!" ¶¶ 127, 351. Its advertisements and Owner's Manuals regularly depict riders without helmets and safety gear. ¶ 37. For years, Defendant's "How to Ride a Onewheel (in 60 seconds)" video made no mention of the products' operational limits, Pushback, Nosedive, or any other safety feature. ¶ 141. Defendant suggested that riders did not need to be concerned with safety because Onewheels "are packed with technology" designed "to keep you perfect." ¶¶ 124, 127. Following the CPSC's warning—which Defendant characterizes as "unjustified" and "alarmist"—it has uploaded several new safety videos to its YouTube channel and purportedly placed a new emphasis on rider safety. ¶¶ 159–163. Contrary to its prior representations, Defendant now claims riders should use safety equipment and stay within their limits. ¶ 37. This new information illustrates the inadequacy of Defendant's prior warnings. ¶ 163. If Onewheels were as safe as Defendant represents, this new safety information would be unnecessary because there has been no significant change in Onewheels' design, hardware, or capabilities. *Id.*

Plaintiffs (and Class Members) are consumers who have purchased or acquired Defendant's "Onewheel" (original model), "Onewheel+," "Onewheel+XR," "Pint," "Pint X," and "GT" (collectively "Onewheel") electronic, self-balancing skateboards. Consolidated Complaint, ¶¶ 421-426. The Nationwide class is defined to include all consumers who purchased the Onewheels, while the Direct Purchase subclasses only includes those consumers who have purchased Onewheels directly from Defendant, with the State subclasses being limited only to consumers of Arizona, California, Florida, Hawaii, Massachusetts, Michigan, New York, North Carolina, Ohio, and Pennsylvania. *Id.* Each of the

Plaintiffs (and, by extension, Class Members) relied on representations made by Defendant on its website, in its sales materials, in its instructional materials, and in its other advertisements that the Onewheel was safe, fun, reliable transportation for all skill levels and almost any age and that the Onewheel's potential to suddenly stop and throw the Plaintiffs and Class Members to the ground were due to user error that could be easily avoided by heeding the warnings provided by the Pushback mechanism. ¶¶ 37, 99, 108, 114, 123-128, 137-139, 151, 157, 167-170, 178-179, 181, 213-215, 232-235, 243-246, 255-258, 270-272, 284-287, 296-299, 312-315, 327-330, 340-343, 371-375, 392-395, 401-404.

## B.    LEGAL STANDARDS GOVERNING MOTIONS TO STRIKE

A district court may strike from a pleading matter that is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). Motions to strike "are generally disfavored." *Leghorn v. Wells Fargo Bank, N.A.*, 950 F.Supp.2d 1093, 1122 (N.D. Cal. 2013). "Indeed, a motion to strike 'should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" *Allen v. City of Santa Monica*, 2013 WL 6731789, at *5 (C.D. Cal. Dec. 18, 2013). Thus, the moving party carries a "high burden to demonstrate that there is no doubt" the allegations should be stricken. *See Podobedov v. Living Essentials, LLC*, 2012 WL 2513489, at *3 (C.D. Cal. Mar. 21, 2012). Defendant does not meet—or even address—this heavy burden. *See Sapiro v. Encompass Ins.*, 221 F.R.D. 513, 518 (N.D. Cal. 2004) ("Courts have long disfavored Rule 12(f) motions, granting them only when necessary to discourage parties from making completely tendentious or spurious allegations.").

Motions to strike class action allegations in particular are disfavored, and it is "rare to do so" before Plaintiffs file their motion for class certification. *Cholakyan v. Mercedes Benz USA, LLC*, 796

F.Supp.2d 1220, 1245 (C.D. Cal. 2011).[2] This rule makes sense because the parties should be afforded the opportunity to develop a record before class certification is decided. *Shein v. Canon U.S.A., Inc.*, 2009 WL 3109721, at *10 (C.D. Cal. Sept. 22, 2009) ("The Court finds that these matters are more properly decided on a motion for class certification, after the parties have had an opportunity to conduct class discovery and develop a record."). Indeed, filing a motion to strike the class allegations risks "piece-meal" resolution of the issues, which "do not serve the best interests of the court or parties." *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *7 (S.D. Cal. May 22, 2009). Using a motion to strike as an opportunity to attack the merits of the claims is particularly wasteful. *See Rosenberg v. Avis Rent A Car Sys.*, 2007 WL 2213642, at *4 (E.D. Pa. July 31, 2007) (noting that defendant had used a motion to dismiss allegedly vague class action allegations "as an opportunity to attack the merits of the class itself" and concluding that such an attack was improper before a class certification motion had been filed).

Since "striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic, numerous judicial decisions make it clear that motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted." *Hynix Semiconductor, Inc. v. Rambus, Inc.*, 2007 WL 4062845, at *2 (N.D. Cal. Nov. 15, 2007). Case law amply demonstrates this disfavor, repeatedly admonishing litigants that motions to strike are "generally not granted unless it is clear that the matter to be stricken could have no possible bearing on the subject

---

[2] *See In re Wal–Mart Stores, Inc. Wage & Hour Litig.*, 505 F.Supp.2d 609, 614-16 (N.D. Cal. 2007) ("the granting of motions to dismiss class allegations before discovery has commenced is rare"); *Moreno v. Baca*, 2000 WL 33356835, at *2 (C.D. Cal. Oct. 13, 2000) (holding that defendants' motion to strike class allegations was premature because no motion for class certification had been filed); *In re NVIDIA GPU Litig.*, 2009 WL 4020104, at *13 (N.D. Cal. Nov. 19, 2009) ("A determination of the ascertainability and manageability of the putative class in light of the class allegations is best addressed at the class certification stage of the litigation."); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2006 WL 3422198, at *3 (N.D. Cal. Nov. 28, 2006) (finding that a motion to strike class allegations from a complaint "is an improper attempt to argue against class certification before the motion for class certification has been made and while discovery regarding class certification is not yet complete").

matter of the litigation." *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D. Cal. 1992); *see also Rosales v. Citibank*, 133 F.Supp.2d 1177, 1180 (N.D. Cal. 2001).

Moreover, "[g]iven their disfavored status, courts often require a showing of prejudice by the moving party before granting the requested relief." *Mag Instrument, Inc. v. JS Prods., Inc.*, 595 F.Supp.2d 1102, 1106 (C.D. Cal. 2008) (internal quotation marks omitted). The Court "must be convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." *In re New Century*, 588 F.Supp.2d 1206, 1220 (C.D. Cal. 2008) (quoting *RDF Media Ltd. v. Fox Broad.* Co., 372 F.Supp.2d 556, 561 (C.D. Cal. 2005)). "In determining whether to grant a motion to strike, a district court views the pleadings in a light most favorable to the non-moving party[.]" *Mag Instrument*, 595 F.Supp.2d at 1106. The Ninth Circuit has emphasized the importance of precertification discovery for addressing the viability of class certification. *See Balser v. Hain Celestial Grp.*, Inc., 640 F.App'x 694, 696-97 (9th Cir. 2016). As a result, California district courts regularly deny motions to strike class allegations at the pleading stage on grounds that such motions are premature.[3]

///

---

[3] *See, e.g.*, *Lengen v. Gen. Mills, Inc.*, 185 F.Supp.3d 1213, 1223  (E.D. Cal. 2016) (denying motion to strike class allegations) ("An argument that Plaintiff[s] ha[ve] not met the class certification requirements of FRCP 23 is more properly brought at the class certification stage."); *Long v. Graco Children's Products Inc.*, No. 13-CV-01257-JD, 2014 WL 7204652, at *4 (N.D.Cal. Dec. 17, 2014) citing *Cruz v. Sky Chefs, Inc.*, C-12-02705 DMR, 2013 WL 1892337, at *5 (N.D.Cal. May 6, 2013), which states "[M]any courts have recognized that the sufficiency of class allegations are better addressed through a class certification motion, after the parties have had an opportunity to conduct some discovery."); *Hunter v. Nature's Way Prod., LLC*, No. 16CV532-WQH-BLM, 2016 WL 4262188, at *15 (S.D. Cal. Aug. 12, 2016) (same); *Bal v. New Penn Fin., LLC*, No. SACV 14-1558 AG JCGX, 2015 WL 3867984, at *5 (C.D. Cal. June 22, 2015) (denying motion to strike class allegations and noting that "rarely do courts grant such motions before class certification"); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1246 (C.D. Cal. 2011) (denying motion to strike class allegations as premature); *Shein v. Canon U.S.A., Inc.*, No. CV 08-07323CASEX, 2009 WL 3109721, at *10 (C.D. Cal. Sept. 22, 2009) (same); *Silverman v. Smithkline Beecham Corp.*, No. CV 06-7272DSFCTX, 2007 WL 3072274, at *2 (C.D. Cal. Oct. 16, 2007) (same); *Baas v. Dollar Tree Stores, Inc.*, No. C 07-03108 JSW, 2007 WL 2462150, at *3 (N.D. Cal. Aug. 29, 2007) (same).

The following analysis demonstrates that Defendant's motion is not only premature, but it also fails to show that Plaintiffs' allegations are, as a matter of law, unsuitable for class certification. Accordingly, the exacting standards of Rule 12(f) require that Defendant's motion be denied in full.

### C. DEFENDANT'S CITATIONS TO CASES GRANTING MOTIONS TO STRIKE ARE THE EXCEPTION – NOT THE NORM – AND NONE OF THOSE CASES APPLY HERE

Rather than address the significant body of caselaw that weighs against its motion, Defendant offers a laundry list of inapposite cases and states that California district courts "have struck class allegations at the pleading stage." Mot. at 7. Defendant fails to appreciate that its cited authority is the exception, rather than the norm (and most of those rulings provided the plaintiffs with the ability and/or instructions to amend). Plaintiffs address these distinguishable decisions in turn:

#### 1. *DeCoteau v. FCA US LLC,* No. 2:15-cv-00020, 2015 WL 6951296 (E.D. Cal. Nov. 10, 2015)

Defendant cites the case of *DeCoteau v. FCA US LLC* in support of its position that the court should grant the instant Motion to Strike. Mot. at 10. Defendant's reliance upon this case is improper. *DeCoteau* did grant defendant's motion to dismiss without prejudice, but it denied defendant's motion to strike on the grounds of mootness. *DeCoteau*, 2015 WL 6951296, at \*4. The court in *DeCoteau* did not even consider defendant's arguments in support of its motion to strike. *Id.* As such, the case fails to inform or support any of the purported issues raised by Defendant's instant Motion to Strike.

#### 2. *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 160 (1982)

Defendant provides an incomplete and out of context quotation from *General Telephone*, an employment discrimination case. Mot. at 7. Defendant asks the Court to consider only a portion of the Supreme Court's reasoning: "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim" (Mot. at 7), while omitting the remainder of the sentence: "and sometimes it may be necessary for the

-11-

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE
PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:21-cv-06088-EJD

1    court to probe behind the pleadings before coming to rest on the certification question." *General*

2    *Telephone*, 457 U.S. at 160. The Supreme Court was also not faced in that case with an analysis of a

3    motion to strike. *General Telephone* turned on the question of whether Congress intended a specific

4    statute to give rise to a new area of class action litigation. This analysis is readily distinguishable—both

5    factually and procedurally—from this action.

6
7    ### 3.    *Moon v. County of Orange*, No. 19-cv-258, 2019 WL 8108730
         (C.D. Cal. Nov. 4, 2019)

8        The *Moon* case addressed issues unrelated to any disputes in the present action: the incarceration

9    of plaintiffs and potential class members. Plaintiffs alleged a wide variety of prisoners' rights violations,

10   including a lack of religious access for prisoners, the grievance system, solitary confinement for prisoners

11   with mental illness, the monitoring of prisoners' phone calls, and medical negligence. The *Moon* court

12   held that the basis to proceed as a class action was "insufficiently articulated," it still granted the

13   defendant's motion to strike *without prejudice*. *Id.* It is apparent, from a simple description of this case,

14   that "individualized determinations" of a right to relief would be required for the aggrieved parties. As a

15   result, the allegations and civil rights claims in *Moon* could not be more dissimilar to the allegations in

16   this case – a uniform design defect alleged to be present in each of the subject Onewheels purchased by

17   the Plaintiffs and the putative Class Members.

18
19   ### 4.    *Enoh v. Hewlett Packard Enter. Co.*, Case No. 17-CV-04212-BLF, 2018 WL 3377547
         (N.D. Cal. July 11, 2018)

20       The *Enoh* case is another inapt employment discrimination dispute. The court found that Plaintiffs

21   were required to amend their overboard class definition to exclude individuals that were barred from

22   recovery by their failure to timely file or who suffered injuries outside of the statute of limitations period.

23   *Enoh*, 2018 WL 3377547, at *15. Hence, the *Enoh* court's decision merely directed Plaintiffs to amend

24   the complaint to exclude certain individuals that failed to meet specific administrative requirements. This

25   case fails to inform or support any of the purported issues raised by Defendant's motion.

-12-

**5. *Stokes v. CitiMortgage, Inc.*, No. CV 14-00278 BRO SHX, 2015 WL 709201 (C.D. Cal. Jan. 16, 2015)**

The *Stokes* case dealt with individual home loan modification applications. The Court held that it was "the very nature of the claims" (CitiMortgage Inc.'s alleged violation of California's HBOR [ban on dual tracking]; violation of California's HBOR [illegal collection of late fees]; and violations of the Unfair Competition Law) that required inquiries into each individual Plaintiff's loan applications and whether those application were "complete" as defined by the applicable statutes. *Stokes,* 2015 WL 709201 at *6–8. Unsurprisingly, the court found that such questions were individualized and not appropriate for class-wide treatment. In the instant case, however, the facts alleged are far from individualized: if an individual purchased a Onewheel during the class period, it contains a design defect (insufficient power system) that renders the device unsafe and the boards' only safety feature ineffective, thereby exposing them to Unwarned Nosedives. This is not akin to a case-by-case evaluation of individualized home loan modification applications. *Stokes* does not provide relevant guidance as to why the Court should grant Defendant's Motion to Strike.

**6. *Sandoval v. Ali*, 34 F.Supp.3d 1031 (N.D. Cal. 2014)**

*Sandoval* was an employment class action addressing an employer's alleged failure to comply with FLSA overtime and minimum wage provisions, failures to comply with California labor law, and violations of the Unfair Competition Law. The Court held that the proposed class was overbroad because it included employees who were not paid based on a "piece rate system," which was the focus of plaintiffs' allegations. (For example, the proposed class included hourly employees.) *See Sandoval*, 34 F.Supp.3d at 1044. Because, as pled, the class itself was inconsistent with plaintiffs' theory of the case, the *Sandoval* court granted the defendant's motion to strike, but provided <u>leave to amend</u> to exclude those individuals. In this case, the persons who purchased the subject Onewheel models each purchased a

-13-

product with an identical design defect; that defect being the focus of Plaintiffs' allegations. *Sandoval* is likewise inapplicable to this action.

### 7. *Langan v. United Services Auto. Ass'n*, 69 F. Supp.3d 965 (N.D. Cal. 2014)

*Langan* held that class allegations may be stricken at the pleading stage only when the complaint shows *conclusively* that the proposed class cannot be certified. The *Langan* court further acknowledged that this was a *rare* occurrence where discovery has not taken place and explained: "[t]he determination of whether Langan would be an appropriate class representative is ripe for determination at this stage of the litigation, because discovery on the class claims would not shed any additional light on the question of whether Langan can satisfy the requirements of Rule 23(a)(4)." *Langan*, 69 F. Supp. 3d at 989. Langan could not meet this burden, because he was a *pro se* plaintiff. As a result, the court granted the motion to strike and provided Langan with leave to amend and the ability to obtain counsel. *Langan* does not apply to this case because Plaintiffs are represented by competent and experienced counsel that is litigating this dispute vigorously.

### 8. *Lyons v. Bank of America*, NA 11-cv-1232-CW, 2011 WL 6303390 (N.D. Cal. 2011)

*Lyons* is another case about alleged wrongdoing associated with loan modification applications in which claims for breach of contract, breach of the covenant of good faith and fair dealing, and violation of the UCL were alleged. The *Lyons* court also acknowledged that "[t]he granting of motions to strike class allegations before discovery and in advance of a motion for class certification is rare." *Id.* at *7 (citing *Cholakyan* 796 F.Supp.2d at 1245). The *Lyons* holding also states "[m]otions to strike are disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Id.* (citing *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1478 (C.D.Cal. 1996)). The *Lyons* plaintiffs' class definition included "many members who have not been injured." *Id.* As a result, it granted the motion to strike, with leave to amend. In this products case, however, Plaintiffs have alleged that anyone who purchased Defendant's defective product suffered injury. *See* ¶¶ 115-116,

-14-

429, 431, 440, 449, 455, 457, 464, 476-478, 484, 486-487, 492, 497, 502, 506, 520, 538, 547, 549, 567, 572, 586, 601, 611, 626, 635, 639, 658, 673, 681, 695, 702, 704, 721, 726, 728, 735, 738, 746, 748, 752. As such, *Lyons* is entirely distinguishable and does not support Defendant's motion in this instance.

After relying on this misplaced authority, Defendant simply declares that "[t]he Court should be comfortable striking the class allegations at this stage of this case because Plaintiffs, in their sixth bite at the apple, have greatly developed the allegations, but still have not demonstrated class treatment is appropriate. Defendant's motion demonstrates the proposed classes cannot be certified; this case should not move forward as a purported class action." Mot. at 8. Yet, no discovery has taken place here. As Defendant is aware, it has not offered or provided any information confidentially, informally, or otherwise to Plaintiffs regarding the design of its Onewheel products. Accordingly, any attempt to argue that Plaintiffs have had "ample time" to "gather necessary information" at this beginning stage of the litigation is contrary to the relevant facts and case law.

### D.   PLAINTIFFS SPECIFICALLY ARTICULATE A UNIFORM DEFECT THAT IS PRESENT IN EVERY ONEWHEEL

Defendant claims that Plaintiffs "do not identify a single defect that uniformly affects all of the putative class members and each of the five different models of Onewheels throughout the entire nation." Mot. at 8. Defendant uses this argument in an attempt to manufacture a "threshold issue" for this motion. This argument fails. A fair reading of Plaintiffs' Complaint demonstrates that all Onewheels contain an inherent design flaw: an insufficient power system. ¶¶ 2-3, 54-87. Plaintiffs allege specific details about the insufficiencies of the devices' motor and battery systems. *Id.* This defect, by design, renders Defendant's single safety feature, Pushback, unable to consistently warn riders that the device is approaching one of its many operational limits and a shutdown of the Onewheel is imminent. *Id.* Plaintiffs clearly allege that this defect is present in each and every Onewheel subject to this class action. *Id.*

///

-15-

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE
PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:21-cv-06088-EJD

Defendant cannot deny that it designed Onewheels using Pushback as the *single* "safety feature" and "warning" that is intended to indicate a number of designed operational limit hazards pertaining to: tire pressure, rider weight, terrain, speed, battery charge levels, weather, and others. ¶¶ 65, 87; *see* Mot. at 5, 13-14.[4] Defendant communicates to users of the Onewheel that "[i]t is absolutely critical to rider safety that Pushback is always respected." Mot. at 13. Plaintiffs allege that the Onewheels' defect, however, prevents Pushback from consistently engaging (or engaging with enough power for the rider to detect it) and, therefore, operation of the device is extremely dangerous, because the rider has no way of detecting the multitude of scenarios in which the board is approaching its operational limits and will shut down to prevent damage to its internal components. ¶¶ 79, 143, 146; *see* Mot. at 13-14.

Nevertheless, Defendant improperly argues the merits of its case in the context of its Motion to Strike. What matters for purposes of this Motion to Strike is the fact that the defect, specifically articulated by Plaintiffs, is alleged to be uniformly present in every Onewheel sold to Class Members. ¶¶ 2-3, 83-87. Whether this allegation is proven correct is a jury question – not a basis to strike the class allegations here.

### E. THE ISSUES RAISED BY PLAINTIFFS ARE NOT INDIVIDUALIZED

Defendant further misconstrues Plaintiffs' allegations by arguing that individualized proof would be required to determine whether Plaintiffs' and Class Members' Onewheels all possess the same, uniform defect. *See* Mot. at 8-12. However, Defendant's position is not well-taken; the insufficient power system, as alleged by Plaintiffs, is present in all Onewheels, as a defect in the very design of all

---

[4] Defendant uses these factors to errantly contend that Plaintiffs "admit that one reason [Nosedives occur] is rider error." Mot. at 10. In doing so, it directs the court to ¶ 79. *Id.* This portion of Plaintiffs' Complaint, (1) pertains to the factors that influence Pushback and (2) never admits that Nosedive (or Pushback) are influenced by rider error. *See* ¶ 79 ("Pushback is solely designed to warn the Onewheel user that they are approaching the Onewheel's limits. But this purported "safety feature" is influenced by tire pressure, wind direction, wind speed, battery level, surface conditions, velocity, grade, terrain, moisture, the rider's stance, the rider's weight, and any other factor that influences the current drawn by the motor.").

Onewheels. ¶¶ 2-3, 54-87; *See Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) ("Appellants easily satisfy the commonality requirement. The claims of all prospective class members involve the same alleged defect, covered by the same warranty, and found in vehicles of the same make and model.").

Moreover, Defendant's own representations establish that the defect is common to each Onewheel. It represents to consumers that, "Like everything in life, Onewheel+ has its limits. If at any time you attempt to go too fast, descend a very steep hill or ride with a low battery, your Onewheel+ *will "push back."* . . . "WARNING: Ignoring safety warnings, including push back, may result in loss of control, serious injury or death." ¶ 63 (emphasis added); Mot. at 5-6. Contrary to this claim, the subject Onewheels *all* suffer from the design defect of having an insufficient power system that renders the sole safety warning unreliable. ¶¶ 2-3, 54-87.

Plaintiffs have specifically alleged that each Onewheel has this same inherent, defective, and dangerous design. *Id.* However, it is premature for the Court to make any determination on the merits of this case. Even at the class certification stage, "it would be error to 'equate a "rigorous analysis" with an in-depth examination of the underlying merits. . . . The district court is required to examine the merits of the underlying claim in this context, only in as much as it must determine whether common questions exist; not to determine whether Class Members [can] actually prevail on the merits of their claims.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011) (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 n.6 (2011)). While Plaintiffs are confident that they will be able to prove their allegations, they need not do so at even the class certification stage, let alone in response to a pre-discovery motion to strike. The Complaint clearly alleges that all Onewheels sold in the subject timeframe possess the design defect, and Plaintiffs' and class members' claims do not require individual analysis. ¶¶ 2-3, 54-87.

///

-17-

Similarly, in *Sanders v. Apple, Inc.*, 672 F.Supp.2d 978 (N.D. Cal. 2009), the court granted defendants' motion to strike allegations over plaintiff's objections that the motion was premature. *Id.* at 990-91. That decision, however, was based at least in part on the argument that the class definition included individuals who did not suffer any injuries and therefore did not have standing to bring their claims. *Id.* at 991. Here, Plaintiffs allege that all of the proposed Class Members have injuries; specifically, they all overpaid for a defective product that is dangerously unsafe.

Given the very early stage of the instant proceedings (where no informal or formal discovery has taken place), it is premature to strike Plaintiffs' proper class action allegations. *See In re Wal-Mart Stores*, 505 F.Supp.2d at 615 ("In the absence of any discovery or specific arguments related to class certification, the Court is not prepared to rule on the propriety of the class allegations and explicitly reserves such a ruling."). Moreover, "[m]otions to strike are disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Lyons v. Bank of Am., NA*, No. C 11-1232 CW, 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011) (citing *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1478 (C.D.Cal.1996).)  Accordingly, Defendant's Motion to Strike should be denied.

## F.    DEFENDANT'S MISREPRESENTATIONS

Defendant does not, because it cannot, dispute that Plaintiffs allege Defendant made the following representations on its website for all potential consumers and putative Class Members to have seen: (1) Onewheels are "safe"; (2) Onewheels are capable of "go[ing] off-road" and "tackl[ing] almost any terrain"; (3) Onewheels are for "almost any age and skill level"; (4) Onewheels are "free from defects in materials or workmanship"; (5) Onewheels are a "pure joy" that are "zippy" and "playful"; (6) Onewheels hit "the sweet spot between price, performance, and practicality"; (7) Onewheels are a "fun toy"; and (8) pushback will "actually and consistently engage to alert them that the board is reaching its operational limits." Mot. 11-12. These statements were conspicuously visible during the alleged class period. For example, any consumer that visited Defendant's website, that downloaded its app or the user manual in

-18-

advance of purchase, or that viewed Defendant's website in conjunction with directly purchasing their Onewheels from Defendant would have seen these statements. ¶¶ 37, 99, 108, 114, 123-128, 137-139, 151, 157, 167-170, 178-179, 181, 213-215, 232-235, 243-246, 255-258, 270-272, 284-287, 296-299, 312-315, 327-330, 340-343, 371-375, 392-395, 401-404., Fns. 16, 18, 30, 34, 49. Throughout the Complaint, Plaintiffs provide direct quotes and citations to Defendant's misrepresentations in conjunction with their advertising of Onewheels. *Id.* Plaintiffs further allege that Defendant made representations based on photographs, videos, and instructional materials Defendant published on its website including, but not limited to, the specific photographs included in the Complaint. *Id.* Plaintiffs also identify specific, direct quotations of public statements made by Defendant's CEO, Kyle Doerksen, supporting Defendant's knowledge that the products were rushed to market without proper testing. ¶ 93. Mr. Doerksen's statements, as alleged, are entirely consistent with the messaging on Defendant's public website.

Plaintiffs similarly allege that Defendant's statements were available to any member of the proposed classes and were seen in whole, or in relevant part, by all Plaintiffs. Defendant, itself, highlights its most significant and widely available misrepresentation: that "pushback *will* engage." *See* Mot. at 13-14. This statement is made in Defendant's user manual, on Defendant's website, on its smartphone application, in its YouTube videos, and in a multitude of other video, audio, and print mediums. ¶¶ 137-138, 141-149. Defendant's argument – that individual reliance issues justify striking Plaintiffs' class allegations – should be rejected, particularly at this early stage of the litigation, for a number of reasons.

Not only is the determination of whether common issues predominate reserved for the class certification analysis, but individual reliance issues are not a dispositive factor for unnamed Class Members, especially at the pleading stage. *See Plascencia v. Lending 1st Mortg.* 259 F.R.D. 437, 448 (N.D. Cal 2009); *Estrella v. Freedom Financial Network, LLC*, 2010 WL 2231790, at *10 (N.D. Cal. 2010). Like Defendant here, the defendant in *Collins v. Gamestop Corp.,* argued that certain claims sounding in fraud "would require individualized inquiries making class treatment inappropriate, and the

UCL and CLRA prospective classes cannot be certified because they include individuals who did not rely on the allegedly concealed facts." *Collins v. Gamestop Corp.*, C10-1210-TEH, 2010 WL 3077671 at *2 (N.D. Cal., Aug. 6, 2010). The court denied defendant's motion to strike class allegations, holding that a presumption of reliance by the class members could arise, thereby precluding the predominance of individual issues. *Id.* at *3 (citing *Tietsworth v. Sears, Roebuck & Co.*, 720 F.Supp.2d 1123 (N.D. Cal. 2010)). It should be noted that that is the standard here, not that there cannot possibly be any individual issues involved in a Class Action claim, but merely that they cannot predominate. "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then 'there is clear justification for handling the dispute on a representative rather than on an individual basis,' and the predominance test is satisfied." *See Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 526 (C.D. Cal. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 at 1022 (9th Cir. 1998). To satisfy this requirement, "common issues need only predominate, not outnumber individual issues." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quotations omitted).

Similarly, the Court in *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010), relying heavily on *Tobacco II* and *Steroid Hormone Product Cases*, specifically rejected defendants' arguments that the class could not be certified because the plaintiffs' UCL, CLRA, and common law fraud claims required individualized proof of reliance. *Id.* at 376-79. The *Chavez* court explained that an individual reliance analysis on each of these three claims was unnecessary, as reliance could be presumed. *Id.* Indeed, other cases with similar allegations have been certified. *See, e.g.*, *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 595-97 (C.D. Cal. 2008) (defective flywheels); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D. Cal. 2004) (defective engine intake manifolds); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (defective throttle body assembly); *see also Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (reversing denial of class certification in a case regarding allegedly defective tire alignment).

Defendant mistakenly argues that Plaintiffs fail to sufficiently plead a uniform duty to disclose. Mot. at 2–3. However, Plaintiffs provide detailed allegations regarding Defendant's concealments and omissions. ¶¶ 133-163.  This argument ignores the fact that Plaintiffs plainly and clearly allege that Defendant had a duty to disclose the alleged defect because it presents an unreasonable safety hazard. *See* ¶¶ 135, 482, 500-501, 517-518, 535-536, 572, 599, 623-624, 656-657, 670-671, 692-693, 718-719.

Defendant further argues that Plaintiffs cannot sustain class-wide claims on their fraud-based claims because they must demonstrate individual reliance on the alleged concealment. Mot. at 2, 14-15. Courts, however, "… have recognized that this element . . . may be presumed in the case of a material fraudulent omission." *Plascencia v. Lending 1st Mortgage*, 259 F.R.D. 437, 447 (N.D. Cal. 2009). The Supreme Court has held, in cases "involving primarily a failure to disclose" that "positive proof of reliance is not a prerequisite to recovery." *Plascencia*, 259 F.R.D. at 447 (quoting *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972)). "Rather, '[a]ll that is necessary is that the facts withheld be material,' in the sense that a reasonable person 'might have considered them important' in making his or her decision." *Id.* Plaintiffs' allegations are sufficient to plead class-wide fraud-based claims.

### G.   A CHOICE-OF-LAW ANALYSIS IS PREMATURE AT THIS JUNCTURE AND SHOULD NOT BE CONSIDERED

Defendant contends that commonality does not exist if a common fact issue "would be resolved differently under various states' laws," Mot. at 15, and, therefore, choice-of-law analysis must be performed now and that "choice-of-law principles prevent application of California law to all of the nationwide putative class members' claims." Mot. at 16. Defendant then argues that such an analysis would result in a lack of commonality. *Id.* Defendant further argues that the Court must presently employ the test from *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012), which "requires this Court (sic) to determine that the laws of the state where each putative class member was present in

-21-

when it purchased its Onewheel applies." Mot. at 16. However, not only was *Mazza* decided at the class certification stage, rather than the Motion to Strike stage, Defendant also misstates the *Mazza* holding.

Specifically, the *Mazza* Court, applying California's choice-of law analysis, held that states have an interest in applying their law to transactions within their borders. *See Mazza*, 666 F.3d at 593. The *Mazza* Court then looked to California's law that "the place of the wrong has the predominant interest" with the "place of the wrong" being the "last event necessary to make the actor liable occurred." *Id.* The court determined, after extensive discovery as to the nature of the transactions in question and the role of the various conduct that occurred in each state as to those transactions, that the applicable location was where the claimant's purchased their vehicles, which was in various foreign states. *Id*. Here, no such discovery or investigation into the underlying transactions has occurred. In fact, the *Mazza* court specifically stated, "[w]e recognize that California has an interest in regulating those who do business within its state boundaries" and then stated that its ruling was specific to the fact pattern regarding "claims of foreign residents concerning acts that took place in other states where cars were purchased." *Id.* at 594. Here, the majority of the proposed Class are alleged to have purchased their Onewheels in California, as they purchased them *directly* from Defendant, which is located in California, on Defendant's website, which is operated in California, and, on information and belief, is stored on servers in California. ¶¶ 25, 177, 209, 326, 339, 350, 367, 391. After discovery, and at the class certification stage of this proceeding, Plaintiffs will be able to demonstrate admissible evidence that the relevant conduct, purchases, and transactions occurred in California and not, as in *Mazza*, in a foreign state. Moreover, all of the other acts and omissions by Defendant occurred in California. In any event, a choice-of-law analysis is a fact-heavy analysis and is generally inappropriate *at this juncture* — especially where the parties have not yet developed a factual record. *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013). Such inquiry rarely, if ever, is appropriate where no discovery has taken place.

Defendant cites *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-CV-04984-JST, 2016 WL 344479 (N.D. Cal. Jan. 28, 2016), where the Northern District of California court held that the choice-of-law analysis was appropriate because "of the advanced stage of litigation and the extensive discovery that [had] already been completed." *Id.* at *6. Given the posture of the instant case, Defendant's citation to *Todd* (and similar cases) is misplaced. Mot. at 17. The court in *Todd* specifically explains that such a decision at the pleading stage would be premature before discovery and the development of a factual record. *Id.* The overwhelming majority of precedent agrees with the *Todd* Court and holds that it is inappropriate to engage in a choice-of-law analysis, or, indeed, to determine the validity of class allegations more generally, at the pleading stage. *See e.g.*, *In re Clorox Consumer Litigation,* 894 F.Supp.2d 1224, 1237 (N.D. Cal. 2012) ("Class allegations typically are tested on a motion for class certification, not at the pleading stage[,]" "[s]ince the parties have yet to develop a factual record, it is unclear whether applying different state consumer protection statutes could have a material impact on the viability of Plaintiffs (sic) claims."); *In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.*, 758 F.Supp.2d 1077, 1096 (S.D.Cal. 2010) ("In a putative class action the Court will not conduct a detailed choice-of-law analysis during the pleadings stage."); *see also Collins v. Gamestop Corp.,* 2010 WL 3077671, at *2 (N.D.Cal. Aug. 6, 2010). Accordingly, in this case, any such analysis at the present juncture is premature.

## III.    IF THE MOTION IS GRANTED, PLAINTIFFS REQUEST LEAVE TO AMEND

Despite Defendant's emphasis that the Complaint represents Plaintiffs' "sixth bite at the apple." Mot., 1, 8. There has been no ruling by this Court analyzing the sufficiency of Plaintiffs' class allegations, nor was there any ruling as to the class allegations found in either of the two actions prior to consolidation. The class allegations set forth in Plaintiffs' Complaint are the result of the straightforward, pre-discovery procedural history of this case and not a successful motion to strike by Defendants. (See docket.) In ruling

-23-

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE
PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:21-cv-06088-EJD

on this motion, Plaintiffs respectfully request that the Court do so in accordance with the long-standing

precedent regarding liberality in amendment.

Under Rule 15(a), leave to amend "shall be freely given when justice so requires," bearing in

mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings

or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*) (internal quotation

marks and alterations omitted). The law in the Ninth Circuit is well-settled that "Rule 15's policy of

favoring amendments to pleadings should be applied with 'extreme liberality." *Eldridge v. Block*, 832

F.2d 1132, 1135 (9th Cir. 1987). When dismissing a claim, "a district court should grant leave to amend

even if no request to amend the pleading was made, unless it determines that the pleading could not

possibly be cured by the allegation of other facts." *Id.* at 1130 (quoting *Doe v. United States*, 58 F.3d

494, 497 (9th Cir. 1995) (internal quotation marks omitted)).

Accordingly, leave to amend will be denied only when allowing amendment would unduly

prejudice the opposing party, cause undue delay, be futile, or if the moving party acted in bad faith.

*Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Plaintiffs request that, should

the Court grant any or all of Defendant's Motion to Strike, that Plaintiffs be provided with leave to amend

the class allegations, along with other relevant factual allegations, including but not limited to the location

of Defendant's servers during the relevant timeframe.

## IV.    <u>CONCLUSION</u>

Plaintiffs' Compliant proposes class definitions and alleges each element of Rule 23, as required

to proceed as a class action. ¶¶ 421-432. That is all that is required at the pleading stage, and Defendant's

premature challenges to the certifiability of the proposed classes should be resolved through briefing on

a motion for class certification, following discovery. *See Kazemi v. Payless Shoesource Inc.*, No. C 09-

5142 MHP, 2010 WL 963225, *3 (N.D. Cal. 2010). Defendant cites class certification decisions where

courts are called upon to conduct an informed "rigorous analysis" as to the requirements of Rule 23 or,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the rare exceptions, where the face of a complaint shows *conclusively* that a proposed class cannot be certified. That is not this case.

Defendant's motion to strike attempts to circumvent the well-established class certification process, and the issues Defendant raises can be proven or disproven on a class-wide basis. As a result, Defendant's Motion to Strike should be denied in its entirety.

Dated: April 22, 2024.                    Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**


By*: /s/ Jerrod C. Patterson*
Jerrod C. Patterson (*pro hac vice*)
Joseph M. Kingerski (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: jerrodp@hbsslaw.com
Email: joeyk@hbsslaw.com

M. Anderson Berry (SB# 262879)
Gregory Haroutunian (SB# 330263)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Facsimile: (916) 924-1829
Email: aberry@justice4you.com
Email: gharoutunian@justice4you.com

*Counsel for Plaintiffs and the Proposed Class*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE
PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:21-cv-06088-EJD