1

2

3        **UNITED STATES DISTRICT COURT**

4        **NORTHERN DISTRICT OF CALIFORNIA**

5        **SAN JOSE DIVISION**

6

7    IN RE: FUTURE MOTION, INC.                    Case No.  23-md-03087-BLF
                                                                21-cv-06088-BLF
8    PRODUCTS LIABILITY LITIGATION

9    This Document Relates to:                     **ORDER GRANTING IN PART AND
                                                   DENYING IN PART MOTION TO
10   *Loh v. Future Motion, Inc.*,                 DISMISS AND DENYING MOTION TO
                                                   STRIKE**
11   No. 21-cv-06088-BLF
                                                   [Re:  ECF No. 120, 123]
12

13           In this putative class action and multi-district litigation ("MDL") member case, Plaintiffs

14   allege that the Onewheel electronic motorized skateboard has a design defect that causes the board

15   to nosedive, throwing riders off the board, and that Defendant Future Motion, Inc., fraudulently

16   promoted Onewheels as "toys" without adequately warning users of the safety risks.  *See* 21-6088

17   ECF No. 76 ("CCAC") ¶¶ 2, 5.  Defendant has filed two motions in the class action case: a motion

18   to dismiss the consolidated class action complaint for failure to state a claim and a motion to strike

19   the class allegations.  *See* ECF No. 120 ("MTS"); ECF No. 123 ("MTD"); *see also* 21-6088 ECF

20   No. 107; 21-6088 ECF No. 109.  Plaintiffs oppose both motions.  *See* ECF No. 125 ("MTS

21   Opp."); ECF No. 126 ("MTD Opp.").  Defendant filed replies.  *See* ECF No. 121 ("MTS Reply");

22   ECF No. 125 ("MTD Reply").  The Court held a hearing on the motions on May 23, 2024.

23           For the reasons stated below, the Court GRANTS WITH LEAVE TO AMEND IN PART,

24   GRANTS WITHOUT LEAVE TO AMEND IN PART, and DENIES IN PART the motion to

25   dismiss and DENIES WITHOUT PREJUDICE the motion to strike.

26   **I.      BACKGROUND**

27           **A.      Factual Background**

28           The Onewheel is a self-balancing, battery-powered electric skateboard that has a single

*United States District Court*
*Northern District of California*

wheel that is fixed to the center of the board and spans the board's width and approximately one-third of its length.  *See* CCAC ¶¶ 2, 30, 42.  The Onewheel uses an electric motor housed inside the wheel, a rechargeable lithium battery housed in one side of the rider platform, and a control module housed in the other side of the platform.  *Id.* ¶ 42.  A user rides a Onewheel in a similar fashion to a traditional skateboard or snowboard, with the rider standing on the platform on either side of the center wheel.  *Id.* ¶ 43.  The Onewheel is self-balancing, meaning that the machine keeps the rider balanced in an "inverted pendulum" with the center of mass above the axis of rotation.  *Id.* at ¶¶ 44–47.  The rider accelerates by leaning forward and decelerates by leaning back.  *Id.* ¶¶ 48–49.

Defendant has developed, produced, and sold the Onewheel since 2013.  CCAC ¶ 31.  Defendant has also developed and published owner's manuals, warranty booklets, advertising, and technical information about the Onewheel.  *Id.* ¶ 32.  Defendant conducts warranty repairs and monitors the performance of Onewheels throughout the United States.  *Id.*

At issue in this action are all Onewheel models, including the Onewheel (original model), Onewheel+, Onewheel+ XR, Pint, Pint X, and GT.  *See* CCAC ¶1 2 n.2.  Defendant lists the top speed of the original Onewheel as 12 miles per hour ("mph"), the Onewheel+ as 19 mph, the Onewheel+ XR as 19 mph, the Pint as 16 mph, the Pint X as 18 mph, and the GT as 20 mph.  *Id.* ¶ 33.  However, Onewheels have been documented to carry riders at speeds as high as 32 mph.  *Id.*

On November 16, 2022, the U.S. Consumer Product Safety Commission ("CPSC") issued a warning to consumers about the risk of death and serious injury associated with the Onewheel ejecting riders and urged consumers to immediately stop using all Onewheel models.  CCAC ¶ 36.  In response, Defendant refused to agree to a recall and called the CPSC's statements "unjustified," "alarmist," "harsh," and "unwarranted."  *Id.* ¶ 37.  Defendant maintained that Onewheels are safe when users ride within their abilities and suggested that riders are at fault when they crash.  *Id.*  Defendant also stated that it evaluated a number of Onewheels that had suddenly stopped and found no underlying technical issues and that the Onewheels performed as designed.  *Id.* ¶ 38.

Plaintiffs allege that the Onewheel has a "Nosedive Defect" in which the front of the machine or the "nose" slams into the ground while the board is still traveling forward, which

brings the board to an abrupt stop and ejects the rider into the ground.  *See* CCAC ¶¶ 54, 59–62.  Plaintiffs allege that "[n]osedives occur when the sensors governing the motor, battery, and electrical systems detect that the motor, motor circuits, motor components, the battery, or a combination thereof, are too close to their functional limits," which causes electrical censors in the machine to preemptively shut the motor down.  *Id.* ¶ 54.  Plaintiffs allege that there are two categories of nosedives: those that are warned by a "Pushback" warning and those without a warning or an inadequate warning.  *Id.* ¶¶ 56–58.  The Pushback warning system causes the machine to "push back" to warn the rider that rider is traveling too fast, ascending a steep hill, or the battery is too low.  *See id.* ¶¶ 63–64.  Plaintiffs allege that "[u]nlike other self-balancing devices, the Onewheel's Pushback is not strong enough to physically push the rider back to a stable position over the wheel by itself."  *Id.* ¶ 64.  Pushback is the only warning system used by the Onewheel to warn a rider that the rider needs to change position, and it does not alert the rider of the reason for the Pushback.  *Id.* ¶¶ 65–67.

Plaintiffs further allege that the Onewheel's design (i.e., the length of the board, the wheel, and the position or the rider) causes the machine to operate too close to the functional limits of the motor and battery.  CCAC ¶ 68.  When the Onewheel operates near its functional limits, the power and torque available to push the rider back is lower, rendering the Pushback warning unnoticeable.  *See id.* ¶¶ 73–76, 81.  The Pushback is also "influenced by tire pressure, wind direction, wind speed, battery level, surface conditions, velocity, grade, terrain, moisture, the rider's stance, the rider's weight, and any other factor that influences the current drawn by the motor."  *Id.* ¶ 79.  Plaintiffs allege that the following defects exist in the Pushback warning system: (1) Pushback fails to engage before the motor shuts down; (2) Pushback can engage with too little time before the motor shuts down; and (3) the motor draws too much current and does not leave enough power in the battery to supply the energy needed for the Pushback.  *Id.* ¶ 84.  Plaintiffs also allege that the lithium battery in every Onewheel is defective because it lacks sufficient capacity to self-balance the board and engage the Pushback system.  *Id.* ¶ 85.  Plaintiffs further allege that the motor in every Onewheel is defective because it lacks sufficient torque to self-balance the board and avoid nosedives.  *Id.* ¶ 86.

3

Plaintiffs allege that Defendant knew of the defects in the Onewheel through several sources: (1) the development of the Onewheel's firmware and testing of the product, CCAC ¶¶ 88–93; (2) the Onewheel software application, which collects data on each board's battery, shutdowns, and performance, *id.* ¶¶ 94–97; (3) consumer complaints, reports of injuries on the internet, posts on Defendant's website, customer reviews on Amazon, and litigation, *id.* ¶¶ 98–105; and (4) the existence of third-party products designed to make Onewheels safer, *id.* ¶¶ 119–22. Despite its knowledge, Defendant promoted the Onewheel as a toy that anyone, of any age, can ride. *Id.* ¶¶ 123–30. Defendant also did not include warnings about the risks of a nosedive in its Owner's Manual and otherwise failed to disclose the Nosedive Defect. *Id.* ¶¶ 131–36. Defendant represents that the Onewheel is safe and that the Pushback feature "will actually and consistently engage to alert [users] that the board is reaching its operational limits," but Defendant fails to mention defects in the Pushback system when describing the feature. *Id.* ¶¶ 137–50.

### B.    Procedural History

On August 6, 2021, Plaintiffs filed their initial complaint in this class action. *See* 21-6088 ECF No. 1. On September 28, 2021, Plaintiffs amended their complaint as a matter of course. See 21-6088 ECF No. 7 ("FAC"). After Defendant filed a motion to dismiss and a motion to strike, the parties stipulated to the withdrawal of the motions and leave to allow Plaintiffs to file a second amended complaint. *See* 21-6088 ECF No. 31 (granting the stipulation). Plaintiffs filed their second amended complaint on February 4, 2022. *See* 21-6088 ECF No. 33 ("SAC"). On July 11, 2022, Judge Davila granted Defendant's motion to dismiss with leave to amend and denied Defendant's motion to strike as moot. *See* 21-6088 ECF No. 56. Judge Davila found that all claims in the SAC are grounded in fraud and subject to Rule 9(b)'s higher pleading standard. *Id.* at 9–10. Under this standard, Judge Davila construed the alleged defect to be the Pushback feature and found that Plaintiffs had failed to sufficiently allege facts that would show the pushback feature was defective. *See id.* at 12–13. After Judge Davila consolidated a related class action against Defendant into this action, ECF No. 75, Plaintiffs filed the operative consolidated class action complaint. *See* CCAC. Defendant again moved to dismiss and moved to strike class allegations. *See* MTS; MTD. After those motions were fully briefed, the case was reassigned to

United States District Court
Northern District of California

this Court and consolidated as a member case in the MDL.  *See* ECF No. 1 (the transfer order); ECF No. 3 (pretrial order no. 1, which consolidated the MDL member cases).  The parties stipulated to the refiling of Defendant's motion to dismiss and motion to strike for disposition by the Court, which the Court granted.  *See* ECF No. 88 (stipulation); ECF No. 98 (granting the stipulation).

The consolidated class action complaint brings claims on behalf of a Nationwide Class, a Nationwide Direct Purchase Subclass, and ten state-specific subclasses.  *See* CCAC ¶¶ 421–22.

Plaintiffs assert the following causes of action:

| Count | Claim | Class and Subclasses | ¶¶ |
|---|---|---|---|
| 1 | Breach of Express Warranty | Nationwide | 433–40 |
| 2 | Breach of Implied Warranty | Nationwide | 441–46 |
| 3 | Unjust Enrichment | Nationwide | 447–52 |
| 4 | Common Law Breach of Contract | Nationwide | 453–57 |
| 5 | Breach of Express Warranty in Violation of the Song-Beverly Consumer Warranty Act | Nationwide<br>Nationwide Direct Purchase<br>California | 458–65 |
| 6 | Breach of Implied Warranty in Violation of the Song-Beverly Consumer Warranty Act | Nationwide<br>Nationwide Direct Purchase<br>California | 466–79 |
| 7 | Violations of the California Unfair Competition Law ("UCL") | Nationwide<br>Nationwide Direct Purchase<br>California | 480–87 |
| 8 | Violation of California False Advertising Law ("FAL") | Nationwide<br>Nationwide Direct Purchase<br>California | 488–92 |
| 9 | Violations of the California Consumer Legal Remedies Act ("CLRA") | Nationwide<br>Nationwide Direct Purchase<br>California | 493–506 |
| 10[1] | Violations of the Arizona Consumer Fraud Act | Arizona | 507–23 |
| 11 | Violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") | Florida | 524–43 |
| 12 | Unjust Enrichment | Florida | 544–55 |
| 13 | Breach of Implied Warranty of Merchantability | Florida | 556–67 |
| 14 | Violation of Hawaii's Unfair Deceptive Acts & Practices Statute | Hawaii | 568–74 |

---

[1] The CCAC restarts its numbering for each state-specific subclass.  For example, the claim for violations of the Arizona Consumer Fraud Act is labeled "Count One."  *See* CCAC ¶¶ 502–23. For convenience and clarity in ruling on these motions, the Court has renumbered them.

United States District Court
Northern District of California

| 15 | Breach of Implied Warranty of Merchantability | Hawaii | 575–87 |
|---|---|---|---|
| 16 | Violations of the Massachusetts Consumer Protection Act | Massachusetts | 588–604 |
| 17 | Breach of Implied Warranty of Merchantability | Massachusetts | 605–11 |
| 18 | Violation of the Michigan Consumer Protection Act | Michigan | 612–28 |
| 19 | Breach of Implied Warranty of Merchantability | Michigan | 629–35 |
| 20 | Unjust Enrichment | Michigan | 636–44 |
| 21 | Violations of New York General Business Law § 349 | New York | 645–60 |
| 22 | Violations of New York General Business Law § 350 | New York | 661–74 |
| 23 | Breach of Implied Warranty of Merchantability | New York | 675–81 |
| 24 | Violations of the North Carolina Unfair and Deceptive Acts and Practices Act | North Carolina | 682–97 |
| 25 | Breach of Implied Warranty of Merchantability | North Carolina | 698–704 |
| 26 | Violations of the Ohio Consumer Sales Practices Act | Ohio | 705–23 |
| 27 | Breach of Implied Warranty in Tort | Ohio | 724–28 |
| 28 | Violation of Pennsylvania Unfair Trade Practices & Consumer Protection Law | Pennsylvania | 729–40 |
| 29 | Breach of Implied Warranty of Merchantability | Pennsylvania | 741–48 |
| 30 | Unjust Enrichment | Pennsylvania | 749–57 |

## II.     LEGAL STANDARD

### A.     Motion to Dismiss

"A Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

1    (internal quotation marks and citations omitted).  While a complaint need not contain detailed

2    factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to

3    relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

4    *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the

5    court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

6            "In alleging fraud or mistake, a party must state with particularity the circumstances

7    constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "Parties must allege fraud with particularity

8    under Federal Rule of Civil Procedure 9(b), including the 'who, what, when, where, and how of

9    the misconduct charged.'"  *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023)

10   (quoting *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019)).

11   Allegations of the circumstances constituting fraud must "be specific enough to give defendants

12   notice of the particular misconduct . . . so that they can defend against the charge."  *Vess v. Ciba-*

13   *Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Bly-Magee v. California*, 236

14   F.3d 1014, 1019 (9th Cir. 2001)).

15           In deciding whether to grant leave to amend, the Court must consider the factors set forth

16   by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the

17   Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003).  A district

18   court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1)

19   undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by

20   amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment.  *Eminence*

21   *Capital*, 316 F.3d at 1052.  "[I]t is the consideration of prejudice to the opposing party that carries

22   the greatest weight."  *Id.*  However, a strong showing with respect to one of the other factors may

23   warrant denial of leave to amend.  *Id.*

24       **B.    Motion to Strike**

25           Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an

26   insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "[T]he

27   function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise

28   from litigating spurious issues by dispensing with those issues prior to trial."  *Sidney-Vinstein v.*

United States District Court
Northern District of California

1    *A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  Although class allegations may be stricken at

2    the pleading stage, "motions to strike class allegations are generally disfavored because 'a motion

3    for class certification is a more appropriate vehicle.'" *Lyons v. Coxcom, Inc.*, 718 F.Supp.2d 1232,

4    1235–36 (S.D. Cal. 2009) (quoting *Thorpe v. Abbott Lab., Inc.*, 534 F.Supp.2d 1120, 1125 (N.D.

5    Cal. 2008)).  "Before a motion to strike is granted . . . the court must be convinced that any

6    questions of law are clear and not in dispute, and that under no set of circumstances could the

7    claim or defense succeed." *Erceg v. LendingClub Corp.*, 475 F.Supp.3d 1071, 1075 (N.D. Cal.

8    2020).  "Given their disfavored status, courts often require 'a showing of prejudice by the moving

9    party' before granting the requested relief." *Mag Instrument, Inc. v. JS Prod., Inc.*, 595 F.Supp.2d

10   1102, 1106 (C.D. Cal. 2008) (quoting *Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp.2d 1101,

11   1152 (C.D.Cal.2003)).  "In determining whether to grant a motion to strike, a district court views

12   the pleadings in a light most favorable to the non-moving party." *Id.*

13   ### III.   DISCUSSION

14   ####    A.    Motion to Dismiss

15   #####        1.   Applicable Pleading Standard

16    Defendant argues that all of Plaintiffs' claims sound in fraud or misrepresentation and must

17   be evaluated by Rule 9(b)'s heightened pleading standard.  MTD at 8.  Plaintiffs argue that their

18   warranty and design defect claims do not sound in fraud and are only subject to the traditional

19   notice pleading standard under Rule 8(a).  MTD Opp. at 9.

20    As stated above, Federal Rule of Civil Procedure 9(b) requires allegations of fraud to be

21   pled with particularity.  This applies even when fraud is not an essential element of a claim.  *See*

22   *Vess*, 317 F.3d at 1103.  Where plaintiffs allege that a defendant has engaged in "a unified course

23   of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim," the claim

24   is said to be "grounded in fraud" or to "sound in fraud" such that the claim as a whole must satisfy

25   Rule 9(b).  *Id.* at 1103–04.  Where a plaintiff alleges some fraudulent and some non-fraudulent

26   conduct, only the allegations of fraud must satisfy Rule 9(b).  *Id.* at 1104.

27    Judge Davila's order dismissing the SAC found that all of Plaintiffs' claims sounded in

28   fraud and were subject to Rule 9(b)'s heightened pleading standard.  ECF No. 56 at 9–10.  In

particular, Judge Davila found that Plaintiffs' claims relied on the same unified theory that "Defendant harmed its customers by fraudulently representing the safety and craftsmanship of the Onewheel." *Id.* at 10. The Court finds that the same is true of the CCAC. To the extent that Plaintiffs argue that their warranty and "design defect" claims do not sound in fraud, the Court first notes that Plaintiffs are not clear about which of their 30 claims are design defect claims. Moreover, on review of each of Plaintiffs claims, the Court finds that each claim relies on the same underlying theory of liability and allegations of a unified course of conduct: Plaintiffs allege that they were harmed when Defendant fraudulently misrepresented the Onewheel as safe and free from defects or failed to disclose that the Onewheel had a design defect. *See, e.g.*, CCAC ¶¶ 443–44 (alleging that Defendant impliedly warranted that the Onewheel was safe and free from defects); *id.* ¶ 482 (alleging that Defendant engaged in fraudulent, unlawful, and unfair conduct in failing to disclose the defect in marketing and selling the Onewheel); *see also Arabian v. Organic Candy Factory*, No. 217CV05410ODWPLA, 2018 WL 1406608, at *3 (C.D. Cal. Mar. 19, 2018) (applying the heightened pleading standard of Rule 9(b) to claims of breach of express warranty, breach of implied warranty, breach of contract, and unjust enrichment because the plaintiff's claims arose from a unified course of conduct: the defendant's misrepresentation that its products contained real flavors). Accordingly, each claim is subject to the requirements of Rule 9(b).

## 2. Adequacy of Allegations of a Defect

Defendant argues that Plaintiffs have not adequately alleged a defect because nosedives are an effect of a defect but not an independent defect and Plaintiffs have identified numerous purportedly defective parts without clearly identifying which of those parts is defective. MTD at 9–11. Plaintiffs argue that they have adequately alleged a defect and they need not allege the causal pathway of the defect to state a claim. MTD Opp. at 11–15. In reply, Defendant argues that, without greater specificity, Plaintiffs allegations would make discovery unwieldy and unmanageable, and that Plaintiffs must identify a single part or component that is defective. MTD Reply at 3–5.

"To comply with Rule 9(b), allegations of fraud must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so

9

that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly-Magee*, 236 F.3d at 1019 (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). Courts have dismissed causes of action sounding in fraud when the alleged defect is not well-defined. *See, e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012) (affirming a district court's dismissal for failure to allege an unreasonable safety defect because the plaintiffs failed to allege how "the loss of connection between the power jack and the motherboard, causes the Laptops to burst into flames"); *Hauck v. Advanced Micro Devices, Inc.*, No. 18-CV-00447-LHK, 2018 WL 5729234, at *5 (N.D. Cal. Oct. 29, 2018) ("Given Plaintiffs' vague and inconsistent definitions of Defect, AMD can hardly be expected to know exactly what the contents of its alleged misrepresentations are."); *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at *14 (N.D. Cal. Mar. 15, 2016) ("Plaintiff cites no case—and the Court is aware of none—where a court has found that such an unspecified potential to fail suffices to allege a material product defect.").

The CCAC alleges that Onewheel users have experienced a phenomenon in which the front of the machine slams into the ground while the board is traveling forward, which brings the board to an abrupt stop and ejects the rider to the ground. *See* CCAC ¶¶ 54, 59–62. The Court agrees with Defendant that the propensity of the Onewheel to nosedive is not a *defect*, but an *effect*. This is significant because other courts have distinguished between the symptoms or consequences of a defect and the defect itself. *See, e.g.*, *Sciacca v. Apple, Inc.*, 362 F.Supp.3d 787, 797 (N.D. Cal. 2019) (noting that the detaching, cracking, and shattering of Apple Watch screens are the consequences of a defect, but such allegations are not sufficient to allege a defect under Rule 9(b)'s heightened pleading standard); *DeCoteau v. FCA US LLC*, No. 2:15-cv-00020-MCE-EFB, 2015 WL 6951296, at *3 (E.D. Cal. Nov. 10, 2015) (noting that engine failure is a symptom, rather than a defect). While the symptoms or consequences of a defect make the existence of a defect possible, a plaintiff must allege more to make the existence of a defect plausible.

In order to state a claim, Plaintiffs must specifically identify a defect in the design of the Onewheel—be it a component, feature, or some combination thereof—that could conceivably

cause the Onewheel to nosedive.  *See Wilson*, 668 F.3d at 1145 (noting that claims sufficient to survive a motion to dismiss included allegations showing that "the alleged design defect could conceivably lead to a safety hazard").  In doing so, Plaintiffs need not "'plead the mechanical details' of a defect in order to state a claim." *DeCoteau*, 2015 WL 6951296, at *3 (quoting *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F.Supp.2d 1220, 1237 n.60 (C.D. Cal. 2011)).

The CCAC fails to adequately allege a defect with particularity because it is not clear what the alleged defect is.  Plaintiffs point to a plethora of components that could be responsible for nosedives, including "the motor, battery, and electrical systems detect that the motor, motor circuits, motor components, the battery, or a combination thereof."  CCAC ¶ 54.  Plaintiffs also point to the design of the Onewheel, including "the length of the board, the wheel, and the position of the rider," as causing the board to operate too close to its functional limits. *Id.* ¶ 68.  Regarding the Pushback feature, Plaintiffs allege that it is defective because it fails to engage, engages too late, and/or engages with too little force to push a rider back. *Id.* ¶ 84.  Plaintiffs also allege that the lithium battery in the Onewheel is defective because it lacks sufficient power and that the motor is defective because it lacks sufficient torque. *Id.* ¶¶ 85–86.  Finally, Plaintiffs allege that the Pushback is defective because it is the only warning system to alert a rider that the board is approaching its functional limits. *Id.* ¶ 87.

This scattershot approach to pleading is not adequate to give Defendant notice of the "who, what, where, when, and why" of the misconduct alleged such that Defendant can defend against the charge.  Plaintiffs' allegations of a defect identify the overall design of the Onewheel and a laundry list of potentially defective components, but such a pleading is substantially the same as alleging that "the Onewheel is defective" and listing its parts.  This is illustrated by the commensurate breadth of Plaintiffs' discovery requests, which request every document regarding the Onewheel's design without limitation to a particular part, component, feature, or combination thereof. *See* MTD Reply at 4.  Given the breadth of Plaintiffs' allegations, Defendant can hardly be expected to know what exactly it is defending against. *See Fontalvo ex rel. Fontalvo v. Sikorsky Aircraft Corp.*, No. 13-CV-0331-GPC-KSC, 2013 WL 4401437, at *4 (S.D. Cal. Aug. 15, 2013) (finding that allegations of a "wide array of parts" that made a helicopter defective were

1    insufficient to state claims for strict products liability, negligence, and breach of warranty); *see*

2    *also Hauck*, 2018 WL 5729234, at *5 (noting that vague and inconsistent definitions of a defect

3    are not sufficient to give the defendant notice of its alleged misrepresentations).

4         Plaintiffs arguments to the contrary are unavailing.  Plaintiffs argue that the Court should

5    follow *MacDonald v. Ford Motor Company*, 37 F.Supp.3d 1087 (N.D. Cal. 2014), and hold that

6    their allegations of a defect are adequate.  MTD Opp. at 11–12.  But the question of whether the

7    allegations of a defect were adequate was not before Judge Tigar in *MacDonald*.  In fact, the

8    section of *MacDonald* on which Plaintiffs rely does not discuss the adequacy of the allegations of

9    a defect, but instead discusses the adequacy of allegations of the defendant's knowledge and

10   omissions.  *See MacDonald*, 37 F.Supp.3d at 1095–97.  Moreover, Plaintiffs cite *MacDonald* as

11   stating that a "causal pathway" is not required, but the phrase "causal pathway" does not appear

12   once in that order.  To the extent that Plaintiffs argue that other district court cases have found

13   similar allegations sufficient, those cases are distinguishable.  In each case cited by Plaintiffs, the

14   complaint alleged a particular defect in a specific part or set of parts in the relevant vehicle.  *See,*

15   *e.g.*, *Zuehlsdorf v. FCA US LLC*, No. EDCV 18-1877 JGB (KKx), 2019 WL 2098352, at *5 (C.D.

16   Cal. Apr. 30, 2019) (transmission defect); *Bryde v. Gen. Motors, LLC*, No. 16-CV-02421-WHO,

17   2016 WL 6804584, at *14 (N.D. Cal. Nov. 17, 2016) (airbag systems defect); *Asghari v.*

18   *Volkswagen Grp. of Am., Inc.*, 42 F.Supp.3d 1306, 1312 (C.D. Cal. 2013) (engine defect); *Price v.*

19   *Kawasaki Motors Corp., USA*, No. SACV 10-01074-JVS, 2011 WL 10948588, at *1 (C.D. Cal.

20   Jan. 24, 2011) (engine defect; in particular, "the pistons, piston rings, and cylinders").  Plaintiffs'

21   allegations are not similarly specific or narrow.

22        Finally, Plaintiffs suggest that the Court should depart from Judge Davila's order and

23   decline to follow *DeCoteau*'s approach to evaluating pleadings of a defect.  *See* MTD Opp. at 13–

24   14.  In *DeCoteau*, the court observed that "the level of specificity required appears to directly

25   correlate to the complexity of the machinery in question. . . . [C]omplicated systems . . . demand

26   more detailed factual allegations in order to identify a plausible defect."  *DeCoteau*, 2015 WL

27   6951296, at *3.  Finding *DeCoteau* relevant, Judge Davila held that the complex nature of the

28   Onewheel necessitated that the Plaintiffs allege more specific details about the alleged defect.  *See*

United States District Court
Northern District of California

ECF No. 56 at 13.  The Court acknowledges that other courts have found *DeCoteau* distinguishable and in doing so, at least one court has implied that *DeCoteau*'s approach is unclear.  *See, e.g.*, *Zuehlsdorf*, 2019 WL 2098352, at *5 ("The [*DeCoteau*] court did not elaborate on what type of 'actual facts,' short of a description of the 'mechanical details' of the defect, the plaintiff might have alleged in order to adequately plead that a defect existed."); *Victorino v. FCA US LLC*, No. 16cv1617-GPC(JLB), 2016 WL 6441518, at *5 (S.D. Cal. Nov. 1, 2016) (distinguishing the facts of the case from *DeCoteau*); *see also Williams v. Tesla, Inc.*, No. 20-CV-08208-HSG, 2021 WL 2531177, at *4 (N.D. Cal. June 21, 2021) (declining to decide whether *DeCoteau*'s standard applies).  The Court need not decide whether to adopt as a general rule *DeCoteau*'s approach to evaluating allegations of a defect because Plaintiffs' allegations fail to allege a defect with the requisite level of particularity to satisfy Rule 9(b).  As the Court found above, because of Plaintiffs' scattershot approach to pleading, Plaintiffs have failed to specifically or particularity allege a component, feature, or some combination thereof that is defective.

Because each of Plaintiffs' claims relies on allegations of a defect, the Court GRANTS Defendant's motion to dismiss each claim for failure to allege a defect.  The Court further finds that amendment is not futile and DISMISSES these claims with LEAVE TO AMEND.

### 3.  Affirmative Misrepresentations

Defendant argues that Counts 1, 3–5, 7–9, 10–12, 14, 16, 18, 20–22, 24, 26, 28, and 30 must be dismissed because Plaintiffs have not pled any misleading statements with particularity.  MTD at 13–14.  Defendant also argues that the statements which Plaintiffs have alleged are non-actionable puffery.  *Id.* at 14–16.  Plaintiffs argue that they have adequately identified numerous misrepresentations that are not puffery because they are specific and measurable statements capable of being proven true or false.  MTD Opp. at 18–20.

"To state a claim for fraudulent misrepresentation Plaintiff must allege with sufficient particularity that (1) defendants misrepresented a fact, knowing that the fact was false, and (2) that plaintiff reasonably relied on this fact to his detriment."  *Mewawalla v. Middleman*, 601 F.Supp.3d 574, 599–600 (N.D. Cal. 2022).  "[W]hether an alleged misrepresentation 'is a statement of fact' or is instead 'mere puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion.  A

statement is considered puffery if the claim is extremely unlikely to induce consumer reliance." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008). While subjective and unverifiable claims about a product are non-actionable puffery, quantifiable statements about the specific or absolute characteristics of a product are actionable. *Id.*

The Court finds that Plaintiffs have adequately pled with particularity misleading statements. For example, Plaintiffs point to Defendant's website, which includes statements touting the Onewheel as safe and easy to use. *See, e.g.*, CCAC ¶ 124 ("[T]here are thousands of calculations happening per second to keep you perfect."); *id.* ¶ 127 ("Anyone can ride Onewheel with a little instruction and practice. Onewheel is packed with technology that actively helps you balance. . . . Tens of thousands of people of all ages and skill levels have learned to ride and we know you can do it too."); ¶ 128 ("There is [no maximum age to ride Onewheel]! We have riders of all ages and it is never too late to start riding a Onewheel.").

The Court also finds that not all of the statements identified by Plaintiffs are non-actionable puffery. General statements that a product is safe and reliable are typically puffery. *See, e.g.*, *Azoulai v. BMW of N. Am. LLC*, Case No. 16-CV-00589-BLF, 2017 WL 1354781, at *7–8 (N.D. Cal. Apr. 13, 2017). However, terms that are typical of puffery may be provably false when considered in context. *See, e.g.*, *Vigil v. Gen. Nutrition Corp.*, 2015 WL 2338982, at *8–9 (S.D. Cal. May 13, 2015) (noting that the terms "premium" and "maximum" would be puffery in isolation but when considered in context with other statements on the product's packaging promised some effect on male potency that could be proven false). Although broad statements that a product is safe and reliable are non-actionable puffery, Defendant's representations that the Onewheel is safe and "keep[s] you perfect" must be viewed in context. Defendant has advertised the Onewheel as being so safe that anyone, of all ages and without any limitation, can ride it, which is a statement that is quantifiable and may be shown to be provably false.

Accordingly, Plaintiffs have adequately alleged affirmative misrepresentations and Defendant's motion to dismiss is DENIED with respect to this argument.

### 4. Omission/Duty to Disclose

Defendant also argues that Count 8 must be dismissed because the omission of a material

United States District Court
Northern District of California

1  fact cannot support a claim under California's False Advertising Law ("FAL").  MTD at 16.

2  Defendant also argues that Plaintiffs' omission theories should fail because Plaintiffs have failed

3  to allege that Defendant had exclusive knowledge of any defect.  *Id.* at 16–17.  Plaintiffs argue that

4  Defendant failed to disclose the defect, that reliance is not required, and that the defect is material,

5  but Plaintiffs failed to respond to Defendant's argument that it did not have exclusive knowledge.

6  *See* MTD Opp. at 15–18.

7          As an initial matter, the Court notes that Defendant challenges Plaintiffs' fraudulent

8  omission theories generally but fails to identify which of Plaintiffs' claims it challenges.  Plaintiffs

9  appear to raise fraudulent omission theories in their claims under the consumer protection statutes

10  of California (Counts 7–9), Arizona (Count 10), Florida (Count 11), Hawaii (Count 14),

11  Massachusetts (Count 16), Michigan (Count 18), New York (Counts 21–22), North Carolina

12  (Count 24), Ohio (Count 26), and Pennsylvania (Count 28).  However, Defendant has only briefed

13  the relevant standard under California law without specifying whether and to what extent that

14  standard may also be applied to the laws of other states.  *See* MTD at 16 (citing the standard under

15  California law).  Because Defendant has failed to brief the laws of other states, the Court will

16  construe Defendant's challenge as applying only to the California law claims (Counts 7–9).  *See*

17  *Gausvik v. Perez*, 392 F.3d 1006, 1009 n.1 (9th Cir. 2004) (deeming abandoned issues raised in a

18  notice of appeal but on which no argument or authority was offered in a brief).

19          "For an omission to be actionable under the CLRA and UCL, 'the omission must be

20  contrary to a representation actually made by the defendant, or an omission of a fact the defendant

21  was obliged to disclose.'"  *Elias v. Hewlett-Packard Co.*, 950 F.Supp.2d 1123, 1134 (N.D. Cal.

22  2013) (quoting *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835

23  (2006)).  A duty to disclose arises under four circumstances: (1) when the defendant is in a

24  fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of

25  material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively

26  conceals a material fact from the plaintiff; and (4) when the defendant makes partial

27  representations but also suppresses some material facts.  *LiMandri v. Judkins*, 52 Cal.App.4th 326,

28  336 (1997).

Defendant is incorrect that an omission theory cannot support a claim under the FAL. "When the defendant has not made any statements at all, a plaintiff cannot assert a claim under the FAL. In contrast, a plaintiff may state a claim under the FAL if the defendant actually made a statement, but omitted information that undercuts the veracity of the statement." *See Hodsdon v. Mars, Inc.*, 162 F.Supp.3d 1016, 1023 (N.D. Cal. 2016) (collecting cases). Plaintiffs do not allege that Defendant failed to make any statements, but rather that Defendant made statements about the Onewheel's safety without disclosing a defect prone to cause injury to riders, information that would clearly undercut the veracity of statements representing that the Onewheel is safe. Thus, Plaintiffs' theory of liability could be adequate to support a claim under the FAL.

On the adequacy of Plaintiffs' allegations regarding omissions, the Court finds that Plaintiffs have failed to adequately allege that Defendant had knowledge of the defect. Under the CLRA, the plaintiff must allege that the defendant was aware of a defect at the time of sale; under the FAL, the plaintiff must allege that the defendant knew that the statement was false or misleading when made; and under the UCL, the plaintiff must also allege knowledge of a defect. *See Punian*, 2015 WL 4967535, at *9. The Court first observes that the parties have argued and briefed two different prongs of the duty to disclose without addressing the other party's arguments. *Compare* MTD at 16–17 (arguing that Plaintiffs have failed to meet the exclusive knowledge prong), *with* MTD Opp. at 17–18 (arguing that Plaintiffs have met the partial representations prong). However, both prongs require allegations that Defendant had knowledge of the defect. *See Herron v. Best Buy Co. Inc.*, 924 F.Supp.2d 1161, 1175–77 (E.D. Cal. 2013). The Court finds that Plaintiffs have failed to allege that Defendant had knowledge of the defect. Plaintiffs have failed to raise any argument in their opposition brief why Defendant had knowledge of the defect. Moreover, the Court finds that the CCAC fails to allege with particularity the circumstances under which Defendant had knowledge of the alleged defect. The CCAC alleges that Defendant was aware of the defect through the development of the Onewheel's firmware, the Onewheel application's reporting, customer complaints, customer reviews, litigation, and third-party safety products. *See* CCAC ¶¶ 88–105. Without more specific allegations regarding the defect, it is difficult to know how Defendant's development of firmware

United States District Court
Northern District of California

or its management of the Onewheel application would give Defendant knowledge of the defect. To the extent that Plaintiffs rely on customer complaints, customer reviews, litigation, and third-party safety products, none of those sources show that Defendant had knowledge of any defect at the time the statements were made or at the time of sale. *See Punian*, 2015 WL 4967535, at *10 (noting that consumer complaints, without more, provided no indication of knowledge of the defect at the time of sale).

Accordingly, the Court GRANTS Defendant's motion to dismiss Counts 7–9 to the extent they rely on a theory of fraudulent omissions. The Court finds that amendment is not futile and DISMISSES these claims with LEAVE TO AMEND.

### 5. Reliance

Defendant argues that Counts 7–10, 18, 21, 24, and 28 should be dismissed because Plaintiffs have not adequately pled reliance. MTD at 17–19. Defendant also argues that Plaintiffs' unjust enrichment claims at Counts 3, 20, and 30 should be dismissed to the extent that they are based on Counts 7–10, 18, 21, 24, and 28. *Id.* at 18. Plaintiffs argue that allegations of individualized actual reliance are not required for their fraudulent omission theories, and each Plaintiff has alleged that they viewed and directly relied upon Defendant's advertising of the Onewheel. MTD Opp. at 16, 20–21.

Plaintiffs' claims under the UCL, FAL, CLRA, and the consumer protection statutes of Arizona, Michigan, New York (with respect to § 350), North Carolina, and Pennsylvania require allegations of reliance. *See Kwikset Corp. v. Superior Ct.*, 51 Cal.4th 310, 326 (2011) (discussing California law); *Sanders v. Harris*, No. 1 CA-CV 19-0835, 2021 WL 282261, at *4 (Ariz. Ct. App. Jan. 28, 2021) (discussing Arizona law); *Cormier v. PF Fitness-Midland, LLC*, No. 331286, 2017 WL 2390691, at *7 (Mich. Ct. App. June 1, 2017) (discussing Michigan law), *vacated in part on other grounds*, 501 Mich. 1046, 909 N.W.2d 266 (2018); *Gale v. Int'l Bus. Machines Corp.*, 9 A.D.3d 446, 447 (N.Y. Sup. Ct. 2004) (discussing New York law); *Bumpers v. Cmty. Bank of N. Virginia*, 367 N.C. 81, 88 (2013) (discussing North Carolina law); *Parrish v. Volkswagen Grp. of Am., Inc.*, 463 F.Supp.3d 1043, 1050 (C.D. Cal. 2020) (discussing Pennsylvania law). In order to establish reliance, "a plaintiff must show that the misrepresentation

17

1  was an immediate cause of the injury-producing conduct, [but] the plaintiff need not demonstrate

2  it was the only cause." *In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009).

3          In this case, Plaintiffs allege generally that they viewed and relied on Defendant's

4  representations to their detriment. *See, e.g.*, CCAC ¶¶ 148–53 (general allegations of reliance).

5  However, "generic allegations of reliance do not satisfy the particularity standards of Rule 9(b)."

6  *In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*, No. 2:08-MD-1919 MJP, 2010 WL

7  1734848, at *6 (W.D. Wash. Apr. 28, 2010). For almost all of the named Plaintiffs, Plaintiffs also

8  allege that the Plaintiff "viewed all of the promotional and instructional videos on Defendant's

9  website." *See id.* ¶¶ 167, 232, 243, 255, 284, 296, 312, 327, 340, 392, 401; *see also id.* ¶¶ 213,

10  270, 368 (similar allegations that the relevant Plaintiff visited Defendant's website and viewed all

11  materials there); *id.* ¶¶ 179–83 (alleging that Plaintiff Smith viewed instructional videos on

12  Defendant's website but without specifying which misleading statements Smith saw or relied on);

13  *id.* ¶¶ 351–52 (alleging that Plaintiff Powell viewed Defendant's advertisements, but without

14  specifying which ones). Although these allegations are more specific than Plaintiffs' generic

15  allegations of reliance, these allegations fail to meet Rule 9(b)'s particularity requirement because

16  their breadth does not adequately give Defendant notice about which of its purportedly misleading

17  statements caused injury to Plaintiffs.

18          Accordingly, Plaintiffs have not adequately alleged reliance, and the Court GRANTS

19  Defendant's motion to dismiss Counts 7–10, 18, 21, 24, and 28 for failure to allege reliance. The

20  Court finds that amendment is not futile and DISMISSES these claims with LEAVE TO AMEND.

21          ### 6.  Breach of Express Warranty Claims

22          Defendant argues that Plaintiffs' breach of express warranty claims (Counts 1 and 5)

23  should be dismissed because Plaintiffs have failed to allege that Defendant denied repairs to any of

24  the Plaintiffs. MTD at 19–21. Plaintiffs conceded that "the Breach of Express Warranty claims

25  are not viable in this class action." Opp. at 4 n.2. Accordingly, these claims are DISMISSED

26  WITHOUT LEAVE TO AMEND.

27          ### 7.  Breach of Implied Warranty Claims

28          Defendant argues that the breach of implied warranty claims (Counts 2, 6, 13, 15, 17, 19,

23, 27, and 29) should be dismissed because Plaintiffs have failed to allege that their Onewheels failed to meet a minimum level of quality.  MTD at 21–22.  Plaintiffs argue that they have adequately alleged that Onewheels are unsafe for ordinary use.  MTD Opp. at 23–24.

"To state a claim for breach of the implied warranty of merchantability, a plaintiff must plead that 'the product did not possess even the most basic degree of fitness for ordinary use.'" *Sloan v. Gen. Motors LLC*, 287 F.Supp.3d 840, 879 (N.D. Cal. 2018) (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal.App.4th 402, 406 (2003)).  As to vehicle defects, "the ordinary purpose of a car is not just to provide transportation but rather safe, reliable transportation." *In re MyFord Touch Consumer Litig.*, 46 F.Supp.3d 936, 980 (N.D. Cal. 2014).

The Court finds that Plaintiffs have adequately alleged that Onewheels are unsafe for ordinary use.  Plaintiffs have alleged that the Onewheel, a transportation device, has a defect that ejects a rider from the board while it is moving, causing severe injury and in some cases death. *See, e.g.*, CCAC ¶¶ 54, 59–62.  These allegations are adequate, on a motion to dismiss, to establish that Onewheels are not fit for ordinary use.  To the extent that Defendant argues that Plaintiffs have failed to allege that Onewheels do not meet a minimum level of quality because Plaintiffs have not alleged that they were forced to stop using their Onewheels, this argument is not appropriate at the motion to dismiss stage. *See Sloan*, 287 F.Supp.3d at 879 (rejecting a similar argument because questions of a defect's severity are questions of fact to be left for the jury).

Accordingly, Defendant's motion to dismiss the breach of implied warranty claims for failure to allege unfitness for ordinary use is DENIED.

### 8. Breach of Contract Claim

Defendant argues that Plaintiffs' breach of contract claim (Count 4) should be dismissed because Plaintiffs have failed to plead a breach of contract with specificity and this claim is barred by the economic loss rule.  MTD at 22.  In their opposition, Plaintiffs argue that they have adequately alleged facts to meet the elements of a breach of contract claim and that they may allege claims in the alternative.  MTD Opp. at 25.  However, at the hearing on the motion to dismiss, Plaintiffs agreed to amend their breach of contract claim to limit its remedy to diminution in value. *See* 21-6088 ECF No. 116 at 49:3–15.  Accordingly, the Court DISMISSES the breach

of contract claim WITH LEAVE TO AMEND such that Plaintiffs can clarify the remedies that they request under that claim.

### 9.  Unjust Enrichment Claims

Defendant argues that Plaintiffs' unjust enrichment claims (Counts 3, 12, 20, and 30) should be dismissed for the same reasons as Plaintiffs' other claims: Plaintiffs failed to adequately allege a defect and that Defendant had knowledge of the defect.  MTD at 22–23.  Plaintiffs have not responded to Defendant's arguments in their opposition.  The Court finds that Plaintiffs' unjust enrichment claims fail because Plaintiffs have failed to allege a defect and Defendant's knowledge of the defect and DISMISSES these claims with LEAVE TO AMEND.

### 10. Conclusion

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss.  Counts 1 and 5 (breach of express warranty) are DISMISSED WITHOUT LEAVE TO AMEND.  All remaining counts are DISMISSED WITH LEAVE TO AMEND for failure to adequately allege a defect.  In addition, Counts 7–9 are DISMISSED WITH LEAVE TO AMEND to the extent that they rely on a fraudulent omission theory for failure to allege Defendant's knowledge of a defect.  Counts 7–10, 18, 21, 24, and 28 are DISMISSED WITH LEAVE TO AMEND failure to allege reliance.  Count 4 is DISMISSED WITH LEAVE TO AMEND for Plaintiffs to clarify their requested remedies.  Defendant's motion is DENIED with respect to its arguments regarding misrepresentations and breach of implied warranty.

### B.    Motion to Strike

Defendant moves to strike the class allegations, arguing that Plaintiffs cannot meet the requirements of Rule 23.  First, Defendant argues that Plaintiffs cannot meet the commonality or predominance requirements because Plaintiffs have failed to allege a uniform defect or uniformity regarding misrepresentations, omissions, or reliance thereon.  *See* MTS at 8–15.  Second, Defendant argues that the nationwide class should be stricken because common fact issues would be resolved differently under the laws of various states pursuant to *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012).  *Id.* at 15–18.  Third, Defendant suggests that class

United States District Court
Northern District of California

1    members may not have purchased Onewheels for personal use.  *Id.* at 19–20.  Fourth, Defendant

2    argues that Plaintiffs' claims are not typical of class members that have not experienced similar

3    issues in using or riding their Onewheels.  *Id.* at 20–21.  Fifth, Defendant argues that Plaintiffs fail

4    to demonstrate that a class action is the superior method of adjudicating their claims.  *Id.* at 21–24.

5    Finally, Defendant argues that Plaintiffs do not have standing to represent consumers residing

6    outside of Arizona, California, Florida, Hawaii, Massachusetts, Michigan, New York, North

7    Carolina, Ohio, and Pennsylvania.  *Id.* at 24–25.  Plaintiffs emphasize that motions to strike are

8    rarely granted and respond that they have adequately alleged a uniform defect, that the issues

9    raised by this class action are not individualized, and that they have alleged uniformity in

10   Defendant's misrepresentations.  *See* MTS Opp. at 15–21.  Plaintiffs also argue that a *Mazza*

11   analysis is premature without discovery.  *Id.* at 21–23.  Finally, Plaintiffs request that if the motion

12   to strike is granted, they be granted leave to amend.  *Id.* at 23–24.

13       The Court finds that Defendant's motion to strike is premature and will DENY the motion

14   without prejudice to Defendant raising these issues at class certification.  Defendant has failed to

15   identify any flaws in the CCAC, which the Court views in the light most favorable to Plaintiffs,

16   that would show that the class allegations are "redundant, immaterial, impertinent, or scandalous"

17   to justify the generally disfavored remedy of striking such allegations from the CCAC.  *See* Fed.

18   R. Civ. P. 12(f).  Nor is the Court "convinced that any questions of law are clear and not in

19   dispute, and that under no set of circumstances could the claim or defense succeed."  *Erceg*, 475

20   F.Supp.3d at 1075.  Defendant's arguments are better heard and evaluated at the class certification

21   stage of litigation, after both parties have had adequate time and opportunity to conduct discovery

22   and assess the viability of the class allegations.  To the extent that Defendant suggests that the

23   Court must conduct a *Mazza* choice-of-law analysis at this stage, not only has Defendant failed to

24   adequately brief such an analysis, but the *Mazza* analysis is a "fact-heavy inquiry [that] should

25   occur during the class certification stage, after discovery."  *Clancy v. The Bromley Tea Co.*, 308

26   F.R.D. 564, 572 (N.D. Cal. 2013) (collecting cases reaching a similar conclusion).

27       Accordingly, Defendant's motion to strike the class allegations is DENIED WITHOUT

28   PREJUDICE to Defendant raising these issues at class certification.

United States District Court
Northern District of California

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.     Defendant Future Motion, Inc.'s Motion to Dismiss (ECF No. 123; 21-6088 ECF No. 107) is GRANTED IN PART and DENIED IN PART.

   a. Counts 1 and 5 (claims for breach of express warranty) are DISMISSED WITHOUT LEAVE TO AMEND.

   b. All remaining Counts are DISMISSED WITH LEAVE TO AMEND such that Plaintiffs may more adequately allege a defect.

   c. Counts 7–9 are DISMISSED WITH LEAVE TO AMEND to the extent that they rely on a fraudulent omission theory for failure to allege Defendant's knowledge of a defect.

   d. Counts 7–10, 18, 21, 24, and 28 are DISMISSED WITH LEAVE TO AMEND failure to allege reliance.

   e. Count 4 is DISMISSED WITH LEAVE TO AMEND for Plaintiffs to clarify their requested remedies.

   f. Defendant's motion to dismiss is DENIED with respect to the arguments to dismiss based on the issues of misrepresentations and breach of implied warranty.

2.     Defendant Future Motion, Inc.'s Motion to Strike (ECF No. 120; 21-6088 ECF No. 109) is DENIED WITHOUT PREJUDICE to Defendant raising these issues at class certification.

3.     Plaintiffs SHALL file an amended complaint consistent with this Order within 30 days.  Plaintiffs may request an extension of time if needed to facilitate settlement discussions.

Dated:  July 12, 2024

_____
BETH LABSON FREEMAN
United States District Judge