**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: FUTURE MOTION, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Elliott v. Future Motion, Inc.*,<br><br>No. 23-cv-06426-BLF | Case No. 5:23-md-03087-BLF<br><br>**ORDER DENYING MOTION TO ENFORCE SETTLEMENT**<br><br>[Re: MDL Dkt. No. 128; No. 23-cv-06426 Dkt. No. 23] |

Before the Court is Plaintiff Schuyler Elliott's ("Elliott") Opposed Motion to Enforce the Parties' Agreement to Settle. MDL Dkt. No. 128; No. 23-cv-06426 Dkt. No. 23 ("Mot."). Defendant Future Motion, Inc. ("Future Motion") opposes Elliott's motion. MDL Dkt. No. 130; No. 23-cv-06426 Dkt. No. 24 ("Opp."). Elliott filed a reply in support of the motion. MDL Dkt. No. 131; No. 23-cv-06426 Dkt. No. 25 ("Reply"). The Court previously determined that this motion is suitable for disposition without oral argument and vacated the hearing date. MDL Dkt. No. 297; No. 23-cv-06426 Dkt. No. 32.

For the following reasons, the Court hereby DENIES Elliott's motion.

**I.    BACKGROUND**

Elliott initially sued Future Motion in Florida state court on May 24, 2023, seeking to recover for injuries sustained while riding Future Motion's "OneWheel" product on a beach in Florida. Dkt.[1] No. 1-1. After being served on June 20, 2023, Future Motion removed the action to the United States District Court for the Middle District of Florida on July 10, 2023. Dkt. No. 1. On December 14, 2023, the case was transferred into *In re Future Motion, Inc. Products Liability*

---

[1] Unless denominated as "MDL Dkt. No.," all docket citations are to the individual docket in *Elliott v. Future Motion, Inc.*, No. 23-cv-06426 (opened Dec. 14, 2023).

1  *Litigation*, No. 23-md-3087 (N.D. Cal.), a multi-district litigation ("MDL") before the
2  undersigned.  Dkt. No. 18.
3        While the MDL transfer petition was pending, counsel for Future Motion contacted
4  counsel for Elliott to invite Elliott to participate in a "Settlement Summit" scheduled for
5  December 6–8, 2023.  Dkt. No. 23-2 at 2.  The invitation letter explained that Future Motion was
6  facing "growing litigation costs" in light of the "significant number of lawsuits" that had been
7  filed against it across the country, so the purpose of the Summit was to "us[e] the remaining
8  insurance funds to resolve lawsuits that fall within the 2019 and 2020 policy periods." *Id.*  Among
9  other information, the Settlement Summit invitation letter noted that "if the Settlement Summit
10 can resolve a significant number of the total 2019 and 2020 claims, the insurance carrier will
11 consider working with Future Motion to resolve the self-insured retention issue, which currently is
12 an impediment to settlement for Future Motion." *Id.* at 3.
13       The Settlement Summit was held as scheduled at Elliott's counsel's office, and Elliott's
14 counsel Michael Morgan and Eitan Goldrosen participated in the summit on his behalf.  Dkt. No.
15 24-1, Declaration of John J. Wackman in Opposition to Plaintiff Schuyler Elliott's Motion to
16 Enforce Settlement ("Wackman Decl.") ¶ 2.  Before negotiations commenced, Future Motion's
17 counsel explained to the participating plaintiffs' counsel that "in order to ultimately achieve
18 settlements, a sufficient number of cases had to be tentatively agreed to in principle in either or
19 both of the two policy years at issue, 2019 and 2020, such that the insurance provider for those
20 years would agree to waive the self-insured retention ('SIR') applicable to each claim being
21 negotiated." *Id.* ¶¶ 3–4.  Elliott's case fell into the 2020 policy year. *Id.*  Future Motion's counsel
22 attests that, as the summit proceeded, Elliott's counsel "occasionally c[a]me into [Future
23 Motion's] conference room to discuss the progress of the Summit," and at one point Counsel
24 Morgan inquired specifically into whether Future Motion "thought a sufficient number of
25 settlements could be achieved to trigger a waiver of the SIR." *Id.* ¶ 5.
26       After the summit concluded, negotiations continued between Future Motion and various
27 plaintiffs' counsel via email exchanges and telephone calls. *Id.* ¶ 6.  Accordingly, on December
28 11, 2023, Future Motion sent an email to Elliott's counsel entitled "Future Motion Negotiations,"

United States District Court
Northern District of California

which listed various plaintiffs and the settlement amount that Future Motion was willing to offer each of those individuals. *See* Dkt. No. 23-1 at 4–5. In that email, Future Motion offered Elliott $45,000 to settle his case. *Id.* at 5. Elliott countered with an offer of $60,000, *id.* at 4, and Future Motion responded with a final offer of $50,000, *id.* at 3. Elliott accepted the $50,000 offer the next day. *Id.* at 2. Future Motion ultimately "achieve[d] a sufficient number of settlements on 2019 policy year cases to allow for a waiver of the SIR applicable to 2019 claims, but was unable to resolve a sufficient number of cases in the 2020 policy year to achieve a waiver." Wackman Decl. ¶ 6. Accordingly, the 2019 cases were settled, but the 2020 cases were not. *See id.*

In January 2024, a dispute arose over whether Elliott's case had been finally settled. *See* Dkt. No. 23-3 at 4. In an email exchange, Future Motion's counsel stated to Elliott's counsel that there had not been enough cases with preliminary settlements falling within the 2020 insurance policy period to trigger waiver of the SIR and allow for final settlement. *Id.* However, Elliott's counsel disputes that "all settlements during the Settlement Summit and the nearly 2 months of negotiations that followed were contingent upon SIR waiver." Dkt. No. 23-4 at 2. Elliott filed the present motion to resolve this dispute.

## II. LEGAL STANDARD

"[A] district court has the equitable power to enforce summarily an agreement to settle a case pending before it." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (citations omitted). The Parties agree that Florida law applies to the settlement in question. Mot. at 4; Opp. at 5–6.

Contract law governs the interpretation of settlement agreements. *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985) (citing *Dorson v. Dorson*, 393 So. 2d 632, 633 (Fla. Dist. Ct. App. 1981)). "A valid contract . . . is generally composed of four basic elements: offer, acceptance, consideration, and sufficient specification of essential terms." *Rauch, Weaver, Norfleet, Kurtz & Co. v. AJP Pine Island Warehouses, Inc.*, 313 So. 3d 625, 630 (Fla. Dist. Ct. App. 2021) (citing *Jericho All-Weather Opportunity Fund, LP v. Pier Seventeen Marina & Yacht Club, LLC*, 207 So. 3d 938, 941 (Fla. Dist. Ct. App. 2016)). "Even though all the details are not definitely fixed, an agreement may be binding if the parties agree on the essential terms and seriously understand and intend the agreement to be binding on them." *Blackhawk Heating &*

3

1  *Plumbing Co. v. Data Lease Fin. Corp.*, 302 So. 2d 404, 408 (Fla. 1974).  Whether a binding

2  settlement agreement was achieved is judged using a preponderance of the evidence standard.

3  *Welch v. N. Am. Tank Line, Inc.*, No. 06-cv-2340, 2008 WL 3982394, at *2 (M.D. Fla. Aug. 25,

4  2008) (citing *U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Corp.*, 931 F.2d 744, 749 (11th Cir.

5  1991)).

6        The law favors enforcement of settlement agreements "whenever possible, [but] the

7  evidence must clearly demonstrate that there was mutual agreement to the material settlement

8  terms."  *Gira v. Wolfe*, 115 So. 3d 414, 417 (Fla. Dist. Ct. App. 2013) (citing *Cheverie v. Geisser*,

9  783 So. 2d 1115, 1119 (Fla. Dist. Ct. App. 2001)).  "Where the parties are merely negotiating as to

10  the terms of an agreement to be entered into between them, there is no meeting of the minds, and

11  consequently no contract while the agreement is incomplete."  *Goff v. Indian Lake Ests., Inc.*, 178

12  So. 2d 910, 912 (Fla. Dist. Ct. App. 1965).  "The party seeking to enforce a settlement agreement

13  bears the burden of showing the opposing party assented to the terms of the agreement."  *Spiegel*

14  *v. H. Allen Holmes, Inc.*, 834 So. 2d 295, 297 (Fla. Dist. Ct. App. 2002) (citing *Carroll v. Carroll*,

15  532 So. 2d 1109, 1109 (Fla. Dist. Ct. App. 1988), *rev. denied*, 542 So. 2d 1332 (Fla. 1989)).

16  **III.  DISCUSSION**

17        In his motion, Elliott argues that settlement should be enforced because "[t]he only

18  material settlement term was the amount of money [Future Motion] would pay Elliott to resolve

19  his case."  Mot. at 5 (citing Dkt. No. 23-1 at 2).  Future Motion responds that its agreement to

20  settle was conditional upon a "clear requirement that a sufficient number of tentative settlements

21  be reached to trigger a waiver of the applicable SIR."  Opp. at 7.  On Reply, Elliott argues that

22  Florida law disfavors conditions precedent—such as the SIR waiver condition—and that the

23  Parties' communications and course of dealing indicate that there was no "requirement" of

24  achieving an SIR waiver in order to finalize settlement.  Reply at 1–3.

25        The Court concludes that Elliott has failed to carry his burden of showing by a

26  preponderance of the evidence that he reached a binding settlement agreement with Future

27  Motion, because a known condition precedent was not met.  The uncontroverted evidence

28  indicates that Elliott's counsel was well aware of the condition that a sufficient number of the

1  2020 cases would need to be tentatively resolved so as to obtain a waiver of the SIR from the
2  insurance carrier before settlements could be finalized.  Elliott's attorneys were informed at the
3  time they were invited to the Settlement Summit that "if the Settlement Summit can resolve a
4  significant number of the total 2019 and 2020 claims, the insurance carrier will consider working
5  with Future Motion to resolve the self-insured retention issue, *which currently is an impediment to*
6  *settlement for Future Motion.*"  Dkt. No. 23-2 at 3 (emphasis added).  Then, before the Summit
7  began, Future Motion's counsel explained to the participating plaintiffs' counsel that "in order to
8  ultimately achieve settlements, a sufficient number of cases had to be tentatively agreed to in
9  principle in either or both of the two policy years at issue, 2019 and 2020, such that the insurance
10 provider for those years would agree to waive the self-insured retention ('SIR') applicable to each
11 claim being negotiated."  Wackman Decl. ¶¶ 3–4.  Evidencing their understanding of this
12 condition, over the next couple of days Elliott's counsel "occasionally c[a]me into [Future
13 Motion's] conference room to discuss the progress of the Summit," and one of Elliott's attorneys
14 expressly inquired into whether Future Motion "thought a sufficient number of settlements could
15 be achieved to trigger a waiver of the SIR."  *Id.* ¶ 5.

16 Given that Elliott's counsel has not provided a declaration disputing these attestations—
17 and, in particular, he does not attest that, as to Elliott, Future Motion abandoned its requirement
18 that a sufficient number of plaintiffs tentatively reach agreement so as to pave the way for waiver
19 of the SIR—the Court is not convinced that "[t]he only material settlement term was the amount
20 of money [Future Motion] would pay Elliott to resolve his case."  Mot. at 5.  Elliott's evidence in
21 support of this argument is an email exchange entitled "Future Motion Negotiations" that begins
22 with Future Motion's counsel stating that the email includes "Future Motion's next moves,"
23 followed by a list of plaintiffs and the amount that Future Motion is willing to pay to settle each
24 plaintiff's case.  Dkt. 23-1 at 4–5.  The final email in the thread (as depicted in Exhibit 1 to
25 Elliott's motion) is from Elliott's counsel and begins: "Please see below and let me know if you'd
26 like to discuss."  *Id.* at 2.  Toward the end of the email, one line reads: "Elliott: Accepts 50k."  *Id.*
27 While this email exchange may be evidence of the Parties' efforts to "negotiat[e] as to the terms of
28 an agreement to be entered into between them," the Court finds that it fails to prove a sufficient

5

"meeting of the minds" as to an entire contract. *See Goff*, 178 So. 2d at 912. It is not at all apparent from Plaintiff's exhibits that Future Motion intended the email to be a complete, standalone offer to Elliott.

Indeed, Future Motion's submissions make quite clear that Elliott's counsel knew that was *not* the intention. *See* Wackman Decl. ¶¶ 3–5. And the email exchange on which Elliott relies is consistent with this understanding, since it indicates only that the Parties continued to negotiate via phone and email after the Settlement Summit until they reached agreement as to one settlement term. Preliminary agreement on one term does not amount to an enforceable settlement agreement where it is not clear that there was a meeting of the minds on *all* material terms and a "serious[] understand[ing]" and intent to be bound by the contract, *see Blackhawk Heating & Plumbing Co.*, 302 So. 2d at 408, proof of which must be "supported by competent substantial evidence," *see Cheverie*, 783 So. 2d at 1119. Taking into account Future Motion's uncontroverted evidence of Elliott's counsel's knowledge of the condition precedent, the Court cannot find that Elliott has provided competent substantial evidence that the Parties mutually intended for the email exchange to create a contract with only one material term.

Elliott argues on Reply that Future Motion's requirement of achieving enough settlements to trigger waiver of the SIR is a "condition precedent" and, "[a]s a general rule, conditions precedent are not favored." *In re Est. of Boyar*, 592 So. 2d 341, 343 (Fla. Dist. Ct. App. 1992); *see* Reply at 1–3. Nearly all of the authorities on which Elliott relies in making this argument involve a court interpreting a provision within a document that was clearly intended to form a contract. For example, *Raban v. Federal Express*, 13 So. 3d 140 (Fla. Dist. Ct. App. 2009), involved a dispute over a "washout settlement agreement" that included terms such as the following: "The parties agree to settle this case in its entirety for the sum of $200,000.00, inclusive of Attorney Fees and Costs," "Claimant agrees to execute a general release and waiver," and "this agreement is contingent upon excess carrier approval." *Id.* at 142. Interpreting those terms, the court explained that "the Agreement provided that Claimant agreed to execute a release, but did not expressly condition formation of the Agreement on the execution of the release," and found that the relevant term was not a condition precedent because elsewhere in the contract "the parties

6

1  used express language to make excess carrier approval a condition precedent." *Id.* at 144.

2  Likewise, the court in *Covelli Family, L.P. v. ABG5, LLC*, 977 So. 2d 749 (Fla. Dist. Ct. App.

3  2008), reviewed a termination clause in a lease agreement and found that because that provision

4  did not "expressly state that obtaining a contractor's estimate is a condition precedent to [the] right

5  to terminate," it would not construe that provision as a condition precedent. *Id.* at 753. Elliott's

6  other cases are similar. *See Chipman v. Chipman*, 975 So. 2d 603, 607 (Fla. Dist. Ct. App. 2008)

7  ("Looking to the plain language in Section I of the agreement, there is no indication that any

8  provision in that section was intended to be a condition precedent to the contract's validity.");

9  *Cook v. Cook*, 94 So. 3d 683, 685 (Fla. Dist. Ct. App. 2012) (explaining that "Paragraph (6) [of

10  the written settlement agreement] . . . specifically allows for the modification of alimony if there is

11  a modification to the custody restrictions but does not restrict the modification of alimony to only

12  those circumstances," and concluding that the provision was "not a condition precedent").

13  In contrast to those cases, Elliott does not ask the Court to interpret whether a provision

14  appearing within a detailed contract is a condition precedent. Instead, Elliott asks the Court to find

15  that an ambiguous email exchange amounts to a complete and enforceable contract, and that a

16  condition precedent to finalization of the agreement—of which both Parties were evidently

17  aware—does not exist. The Court declines this request. Although conditions precedent are not

18  "favored," they can be effectuated by "plain, unambiguous language or by necessary implication."

19  *In re Est. of Boyar*, 592 So. 2d at 343. Here, both situations apply: Future Motion communicated

20  in plain, unambiguous language the condition related to the SIR waiver, *see* Wackman Decl. ¶¶ 3–

21  5, and the condition is necessarily implied by the incomplete nature of the email exchange—which

22  was following up on the Settlement Summit—submitted by Elliott, *see* Dkt. Nos. 23-1, 23-2.

23  For similar reasons, this case is not like *White v. White*, 141 So. 3d 645 (Fla. Dist. Ct. App.

24  2014). As Elliott correctly notes, *White* involved a dissolution of marriage agreement. *See* Reply

25  at 2; 141 So. 3d at 646. Among various specific terms, the agreement "contained the following

26  language: 8. ALLOCATION OF DEBTS. Husband will assume all wife's credit card debt for the

27  following cards and balances. Husband will not be responsible for any additional charges placed

28  on these cards by the wife." 141 So. 3d at 646. A dispute over that provision arose, and the trial

7

court issued an order "requiring the former wife to pay her credit card debt before the former husband would be required to reimburse her." *Id.* The appellate court reversed and remanded, concluding that the husband's asserted condition precedent—that the wife pay her debt before being reimbursed—contradicted the "clear and unambiguous" language of the marital settlement agreement, and should thus be rejected because such conditions will generally not be found except by plain language or necessary implication. *Id.* Again, though, the issue presented by Elliott's motion is not the meaning of a specific term or provision in a written contract. Rather, it is about whether the Court can ignore both Parties' awareness of an unambiguous condition precedent to entry into the contract and instead enforce an ambiguous email exchange as the entire contract. It cannot. Future Motion's counsel has submitted undisputed evidence showing that the condition was clearly communicated (and understood) *prior to* commencement of settlement negotiations. *See* Wackman Decl. ¶¶ 3–6. This fact pattern easily distinguishes the motion before the Court from a case in which "a party makes a subsequent assertion unsupported by the parties' communications," Reply at 2, as was the issue in *White*. For that reason, *White* is simply not analogous to Elliott's situation.

Elliott's other arguments on Reply fare no better. First, the SIR waiver condition is not vague or ambiguous. As Future Motion's counsel attests, and as Elliott's counsel has not controverted, Future Motion's counsel explained to the plaintiffs' counsel participating in the Settlement Summit that "in order to ultimately achieve settlements, a sufficient number of cases had to be tentatively agreed to in principle in either or both of the two policy years at issue, 2019 and 2020, such that the insurance provider for those years would agree to waive the self-insured retention ('SIR') applicable to each claim being negotiated." Wackman Decl. ¶ 3. Elliott's counsel demonstrated their understanding of this condition by following up about it throughout the Summit, *id.* ¶ 5, which undermines Elliott's after-the-fact argument about ambiguity.

Second, Elliott has not submitted any competent evidence suggesting the principle that "one who prevents the happening of a condition precedent upon which his liability is made to depend, cannot avail himself of his own wrong and thereby be relieved of his responsibility to perform under the contract," *Ward v. Branch*, 429 So. 2d 71, 74 (Fla. Dist. Ct. App. 1983), applies

8

here. Contrary to Elliott's arguments, Future Motion did not have *unilateral* control over whether cases settled; both sides to a settlement negotiation have valuations and options that they are considering in deciding whether to agree to settle for a certain amount. The email exchange on which Elliott relies in bringing this motion shows that Future Motion continued to "remain interested in resolving cases" and was "open to discussions on any of the cases," and that Future Motion moved in the amount it was willing to offer Elliott in order to facilitate settlement. Dkt. No. 23-1 at 3–4. Future Motion also mentioned in another email that it was "really hoping [to] resolve the 2019 claims" in order to trigger the SIR waiver. Dkt. No. 23-3 at 12. There is no evidence indicating that Future Motion intentionally rejected reasonable settlement offers in order to avoid triggering the SIR waiver for either policy period.

In sum, the Court concludes that the preponderance of the evidence supports a finding that achieving a sufficient number of settlements to trigger an SIR waiver was a condition precedent to finalization of Elliott's settlement. "A condition may be either a condition precedent to the formation of a contract or a condition precedent to performance under an existing contract." *Mitchell v. DiMare*, 936 So. 2d 1178, 1180 (Fla. Dist. Ct. App. 2006). "In the case of a condition precedent to formation, as here, the contract does not exist unless and until the condition occurs." *Id.* Due to an insufficient number of settlements-in-principle, the SIR waiver applicable to Elliott's claim was not triggered. Accordingly, a condition precedent to formation of the contract was not met. Elliott has failed to carry his burden to prove the existence of an enforceable settlement agreement.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff Schuyler Elliott's Opposed Motion to Enforce the Parties' Agreement to Settle (MDL Dkt. No. 128; No. 23-cv-06426 Dkt. No. 23) is DENIED.

**IT IS SO ORDERED.**

Dated: March 5, 2025

BETH LABSON FREEMAN
United States District Judge

9